*39
 
 Bayard,
 
 Chief Justice:
 

 This' case presents the same point which was decided in the cases of
 
 Kellog
 
 vs.
 
 Griffin,
 
 17
 
 Johns.
 
 274, and
 
 Pringle
 
 vs.
 
 Isaac,
 
 11
 
 Price Exch. Rep.
 
 445, in both of which the plaintiff as in this wished to indulge the defendant, and yet to preserve his lien, and gave like conditional orders to the sheriff not to proceed, unless pressed by junior executions. The uniform current of decisions in the English courts, and in those of New York, has settled the principle, that if the plaintiff suffers his execution to become dormant, it is to be considered as constructively fraudulent against subsequent execution creditors, and loses its priority. The practice in this State has been for the sheriff to levy on the goods, make an inventory and appraisement of them, and leave them in the hands of the defendant. This is a greater latitude than is allowed by the English practice. The mere fact then, under our practice, of leaving' the goods in the hands of the defendant, is not per se fraudulent, and does not jeopard the lien of the execution. But if the plaintiff suspends his execution, by any order to the sheriff which shows that it is not his immediate intention to collect the debt but to cover the property of the debtor for his use, it is an abuse of the process which the law will not permit, and considers as a fraud upon subsequent creditors. In the case of
 
 Kempland
 
 vs.
 
 Macauley et al., Peake
 
 N.
 
 P. C.
 
 66, it was ruled by lord Kenyon, that where the plaintiff’s attorney directed the sheriff not to levy under the writ until'a
 
 future
 
 dáy, it was the duty of the sheriff to levy under another execution coming in the mean time, because he had no right to keep the first writ hanging over the heads of other creditors. The principle applies as well to an indefinite as to a definite postponement. A stringent objection to a conditional postponement such as that presented in this case, and in those to which I have referred, is that it converts a public officer into a private agent. The sheriff is a public officer who has no right to grant any indulgence himself, nor to lend himself to any plans of accommodation which may prejudice the rights of others. Additionally, it may be remarked, that at a very early period in the history of this government, an act of assembly was passed
 
 (Dig.
 
 75,) invalidating all sales of goods or chattels, unless there was an actual delivery of the possession to the vendee, and making them liable to the demands of all creditors if they returned to and continued in the possession of the vendor.
 

 To permit the lien of an execution to preserve its priority where the plaintiff suffers it to be dormant, or indicates by his conduct that it is not his intention to levy the debt, but merely to cover the pro
 
 *40
 
 perty of his debtor, would be in effect to defeat the salutary provisions of the law, and enable the parties to practice the same fraud by means of a judgment and execution. It is true, that a decision was made in the year 1818, in the Court of Common Pleas, in Kent county, in the case of
 
 Starr
 
 &
 
 Co.
 
 vs.
 
 Lewis
 
 &
 
 Purden,
 
 which sustained the lien of the first execution, although stayed by the plaintiff; but it is understood that a contrary decision was afterwards made by the same court in Sussex county, and the opinion and practice of the profession in New Castle county, has been in accordance with the principles of the common law. 1 am, therefore, clearly of opinion that wherever an execution is suffered to become dormant by any act or omission of the plaintiff, it loses its priority; and an execution coming in the meantime, is entitled to preference.
 

 Harrington,
 
 Judge.
 

 I have examined the records in Kent county, and find that “stayed by order of plaintiff,” is a very common return to execution process. Such returns are made to almost every term; and they could have become common only upon the opinion existing at the bar, that the English rule had not been adopted here, and that a’ plaintiff could show this lenity to his debtor without thereby losing the priority of his execution. This opinion, which 1 may say is unanimous with the Kent lawyers, I find upon inquiry to have been sustained by several decisions in the old courts, and particularly by the case of
 
 Starr
 
 &
 
 Co.
 
 vs.
 
 Lewis
 
 &
 
 Purden
 
 in which, by agi'eement of counsel entered on the record, the very question was brought before the Court of Common Pleas, with a view of settling the law. The law was settled by that court after full argument and deliberation, contrary to the English rule, which the court said “a long course of practice had, in this State modified, and in fact abrogated.”
 

 (a.)
 

 The frequent returns of executions stayed, show that this decision was regarded as establishing a principle; and I have perhaps on this account not been able to find any subsequent case in which the question
 
 *41
 
 was raised until the case of
 
 The Farmers’ Bank
 
 vs.
 
 Rogers
 
 &
 
 Reeves,
 
 cited in the argument. But I well remember that on the trial of
 
 Fiddeman
 
 vs.
 
 Biddle,
 
 (1
 
 Harr. Rep.
 
 500,) this question was treated as settled, though the case went off on other grounds. The case of
 
 The
 
 
 *42
 

 Bank
 
 vs.
 
 Rogers
 
 &
 
 Reeves
 
 was cited as a decision of this court. Í have no recollection of it., It was probably in the Court of Common Pleas, shortly before the organization of this court, as it was certainly before Chief Justice Thos. Clayton. . Be this as it may, if has great weight as an authority in point, concurring as it does with decisions made twenty years ago, and with a practice which was even then said to have been of long continuance in this State. The case was this: ex relatione J. A. Bayard.
 

 Bonney & Bush, Siddle and others, judgment creditors of Rogers & Reeves, issued execution process which they placed in the sheriff’s hands, with directions to levy but not to proceed to a sale until further orders, unless other executions should come into his hands. The sheriff levied and returned his process without sale. Writs of ven-ditioni exponas were regularly issued to the next term. Between the return of the writs of fieri facias and the issuing writs of venditioni exponas, the Farmers’ Bank issued their fi. fa., and placed it in the sheriff’s hands, with directions to proceed; and now claimed the proceeds of sale, on the ground that the prior execution creditors had lost their preference by their orders to the sheriff to stay proceedings. The court decided that the prior executions had not lost precedence.
 

 I consider this question then as
 
 decided;
 
 and I am satisfied with the previous decisions, at least so far as is necessary to make them cover the present case. I think it
 
 not only reasonable but necessary
 
 that a plaintiff should be permitted, without losing his priority, to give some indulgence to his debtor; at all events, in cases where such stay does not produce actual injury to others. It would be ruinous to debtors, to place it out of the power of a plaintiff to stay his execution. We had almost as well adopt the English rule in all its strictness, and require the sheriff to take possession of goods when he makes his levy. Unless this be done the possession of goods by a defendant after levy, may in any case induce a false credit, and may as reasonably be regarded as evidence of fraud as a stay. The levy itself is no notice to the public unless the goods be taken away, and persons interested must resort to the public records for evidence of liens. Why then should a stay before levy be regarded as fraudu
 
 *43
 
 lent per se, when suffering goods to remain in the defendant’s hands, or even a stay after levy, is not? Perhaps some limitation in point of time ought to be placed by the Legislature on this right of indulgence, as it is given at the risk of injuring others, and this danger increases by the length of the stay; or some distinction might possibly be made by the court in reference to cases where injury has actually arisen from the stay; but in the present case I have no hesitation in in adopting the principle announced in Starr and Fisher “that a stay of execution is not
 
 per se
 
 a badge of fraud; other circumstances must appear to render it such:” though I think the case itself went beyond that principle.
 

 On the other point suggested in the argument, I think Janvier’s execution would have lost its preference, if it had in fact issued under his conditional order to the prothonotary. Such an order would operate as a legal fraud if acted upon. The process of the court is alike free to all; the public records afford the only evidence of what is done in a public office, and the only notice to the world of legal proceedings. If an advantage is to be gained by diligence, the evidence of such diligence must be put on the record; it is so for the purpose of establishing a claim to a preference; it is so for the purpose of notice to others, and especially it is so to prevent frauds and keep the public officer faithful and impartial. He who first aiders a judgment docketted, or an execution issued, is entitled to have it first done; but it must be an actual order or it is nothing which can legally affect the rights of others. A conditional order such as this if carried out would operate, not only as a legal fraud on the public, but an actual fraud on the person who next ordered process. If then Houston had directed the prothonotary to issue his execution at the time he was told of Janvier’s conditional order, or at any time before that order became absolute, I think he would have been entitled to the preference. But he did not do so, and did not direct his execution to be issued until after Janvier’s was in the sheriff’s hands.
 

 I am for refusing Mr. Booth’s motion, and directing the proceeds of sale to be applied to Janvier’s execution.
 

 Layton,
 
 Judge.
 

 This case presents the following facts: — On the 4th of November, 1833, a judgment was entered in favor of John Jan-vier
 
 vs.
 
 Dr. James N. Sutton, the real debt whereof was $7,644 40, with interest from December 1, 1830. A credit of $4,008 12 was endorsed upon this judgment on the 9th June, 1834, leaving a balance due of $3,636 28, with interest from the day of the credit.
 

 Under this judgment executions were issued, to wit: — 1. Fi. fa*
 
 *44
 
 vice comes, issued to November term, 1838. 2. Alias fi. fa. No. 4, to November term, 1834: returned “stayed by order of plaintiff's attorney. 3. Alias plu. fi. fa. No. 03, to November term, 1839, issued 9th September, 1839, and placed in sheriff’s hands at 10 o’clock, P. M., of the same day. This execution was accompanied by an order in writing from Thomas Janvier, jr., plaintiff’s attorney, directing the sheriff “not to proceed with this execution unless further ordered, or unless compelled to do so by other judgment creditors.” To this execution the sheriff returned “Levied on the defendant’s goods and chattels, as per inventory annexed, and defendant’s goods sold on 15th November, 1839, for $1,793 17.”
 

 On the 10th of August, 1838, a judgment was also entered in favor of George Houston
 
 vs.
 
 the same defendant, Ur. Sutton and others, on which the real debt endorsed was $1,200, with interest from 2d August, 1838, and stay of execution till 2d August, 1839. Houston called at the office of the prolhonotary on the 9th of September, 1839, with the design of ordering an execution on his judgment, when the prothonotary informed him that he had previously received an order from Mr. Janvier that “in case any execution was ordered by any one else, against Ur. Sutton to issue one first for him,” and that he felt himself bound by that order to issue first for Janvier. Houston remarked, “it is no use of my taking execution, if Mr. Janvier has made that order;” and went away without ordering an execution.
 

 Immediately after, and on the same day, Janvier directed an execution to be issued on his judgment, and placed it in the sheriff’s hands as aforesaid, with the order aforesaid. Afterwards, on the 19th of September, 1839, Houston returned and ordered an execution on his judgment, and placed it in the hands of the sheriff, at 10 o’clock, A. M., of that day, to wit: — Fi. fa., No. 75, to November term, 1839; which Houston directed the sheriff “to levy when he levied Mr. Janvier’s. On this execution the sheriff returned “Levied, &c.; sold, &c.; subject, &c.”
 

 Three other executions were issued at the same time (Sept. 19th,) against the sureties of Sutton, at the suit of Houston, on which nothing appears to have been done.
 

 It appeared further, that on the 14th October, 1819, a fi. fa., No. 90, to November term, 1839, was issued at the suit of James A. Bay-ard, Esq., against the same defendant, Dr. Sutton, on a judgment, whereof the real debt was $1,200, and on which, after deducting credits, there was a balance due of $750. Under tin’s execution,
 
 *45
 
 however, nothing was claimed out of the proceeds of the sale; the matter having been arranged between Mr. Bayard and Mr. Janvier.
 

 George Houston claims so much of the money arising from the sale of defendant’s goods, as may be necessary to satisfy his execution; on the ground that Janvier, by his delay, and written order to the sheriff-, had lost his priority; and had been guilty of a legal fraud, in attempting to
 
 protect
 
 the goods, &c. of the defendant..
 

 If this were simply a case of a senior execution creditor,
 
 staying his execution in the hands of the sheriff, by an order, over ichich he had no further control, and by which he had actually given his debtor time,
 
 after which a junior execution seizes and sells the goods, then, according to the English authorities and practice, there could be no doubt that the first execution had lost its priority, and the money would be applicable to the second execution.
 

 The mode of levying an execution in England, as well as the authority which the sheriff"there actually exercises over the goods seized, differs from the mode of proceeding and the sheriff’s custody of the goods in this State. In England the sheriff seizes the goods and sells •without the intervention of appraisers. He takes the goods into custody, and is responsible for their forthcoming, and for their value* Here the practice is different. The sheriff seizes the goods, has them appraised, and if, afterwards they are sold, he is responsible only for the amount of the sales. He is not answerable for the amount of the levy, unless he has been guilty of wilful negligence: and even here, his liability rests upon a special statute. This mode of proceeding, regulated too as it is, by legislative enactments, would seem to indicate, that the Legislature intended to alter the common law, in ease of the debtor.
 

 Although such is the inclination of my mind, at present, yet I am not now prepared to decide this question. The case under consideration does not require it. The practice in this State has been settled and uniform. I learn that the late Court of Common Pleas in Kent county, in the case of
 
 Starr
 
 & Co. vs.
 
 Fisher
 
 &
 
 Shockley
 
 decided in favor of the first execution creditor; and this was understood to have been an extreme case. I have understood that a contrary decision has been made in Sussex, but have not been able to obtain a report, or indeed the particulars of the case. But the opinions of gentlemen of the bar in that county, are understood to be in favor of the English practice. Before therefore, I decide upon a question of this magnitude, affecting the rights of persons, and of properly to a vast amount, I desire to sec the case fairly presented;
 
 *46
 
 and to hear it fully argued, before the whole court in bank; whose decision would settle the law, and the practice throughout the State.
 

 The case now before us, presents, as I think, but little difficulty. It is conceded by both parties, that there were two executions, un-executed, in the hands of the sheriff, at the same time. The objection to the first execution’s taking the proceeds of the sale, is on the ground that the written order from Janvier to the sheriff, amounted to an order to stay proceedings, and that it was a legal fraud against junior execution creditors. Now what was that order? It directed the sheriff “not to proceed under the execution unless further ordered, or unless compelled to do so, by other judgment creditors.” It was, in effect, that the plaintiff was unwilling to distress the defendant, by urging a sale of his goods, unless, to save himself and maintain the priority of his execution, he was compelled to do so, by the suing out of other executions against the defendant. Such is the plain, obvious construction to be given to this order. Janvier by his order, thus cautiously worded, plainly indicated that, although he did not desire to force a sale of Dr. Sutton’s goods, he was nevertheless, unwilling to run the risk of losing his money, by giving other creditors a preference. Hence he takes care to keep the execution
 
 subject to his order.
 
 At most, it was but a conditional order; for he plainly directs, that in the event of “other judgment creditors” proceeding against the defendant, she sheriff was to consider himself “compelled” to execute Janvier’s writ. Nor can this order be re-regarded as a stay of execution process, to the injury of junior creditors. It is no delay of process, to postpone its execution till the day before the return day. The writ in substance directs the sheriff to have the money in court at the return of the writ. The debtor may be thus indulged, without subjecting the creditor to the risk of losing his priority of claim. To give the debtor
 
 time,
 
 an actual order to stay proceedings, or a return of “staid,” over which, for the term the plaintiff has no further control, and no powfer to countermand it, is necessary to raise the general question, which, it has been contended, grows out of the case. The order in question possesses not such a feature.
 

 I find my view of this case sustained by the case of
 
 Doty
 
 vs.
 
 Turner,
 
 8
 
 Johns. Rep. 20.
 
 In that case “the agent of the plaintiff delivered an execution to the sheriff, and directed him to levy it on the property of the defendant, but said to the sheriff that he supposed the plaintiff did not wish to distress the defendant, and that if the property remained in the possession of the defendant, after the levy, the
 
 *47
 
 plaintiff would not hold the sheriff responsible if it was squandered, and that he need not take a receipt for it.” The sheriff, after levying on the goods of the defendant, did nothing further until after the execution had expired, and a second execution was delivered to him, when he sold the property on both executions. It was held, that as there were no instructions from the plaintiff to delay the execution, after the seizure; nor any agreement between the plaintiff and the defendant to let the first execution sleep in the sheriff’s hands; nor any evidence of such a delay as would afford a legal presumption of frand, the first execution did not loose its preference.”
 

 Rodney, for Janvier.
 

 Booth., for Houston.
 

 This it will be seen'was a strong case. The first execution, under the order there given, had been returned, and a junior execution, after the return of the first, seized and sold the property of the debtor; and yet the court decided that there was no “evidence of such a delay as would afford a legal presumption of fraud;” and that “the first execution did not loose its preference.”
 

 So I think, in the case before the court, Janvier’s execution has not lost its preference by reason of the order aforesaid, and that he is entitled to the money which the sheriff has brought into court.
 

 Mr. Booth
 
 took nothing by his motion, and the money was ordered to be paid to Janvier’s execution.
 

 (a.)
 

 ) I am indebted to Mr. J. M. Clayton, for the following report of the case of
 

 Starr
 
 &
 
 Co.
 
 vs.
 
 Lewis
 
 &
 
 Purden.
 
 Court of Common Pleas, Kent county, November Term,
 
 1818.
 

 The plaintiffs sued out execution against Lewis & Purden, which was returned “stayed by order of plaintiffs.” After this
 
 the
 
 defendants gave credit to Lewis <& Purden, obtained judgment and sued out a fi. fa. The plaintiffs then issued a venditioni exponas, and the question was who should take the proceeds.
 

 
 *41
 
 Starr & Co’s. fi. fa. issued to November term, 1815, and was returned “levied, &c.” — venditioni exponas to May term, 1816, returned “stayed by-order of plaintiffs.’’ — alias venditioni exponas to
 
 November term,
 
 1818, returned “goods sold on 17th July, and sufficient.”
 

 Fisher & Shockley’s judgment was obtained on the 4th April, 1818, and
 
 ji. fa.
 
 issued the same day to
 
 October
 
 term., 1818, which was returned “levied, &c., and sold on 17th July, for $507 00, and part applied to prior executions, and
 
 not
 
 sufficient.”
 

 By endorsement on the record, it was agreed between the plaintiffs in the two executions, to submit the question of 1 he application of the money to the court, on the above facts.
 

 Hall,
 
 for Starr & Co., said it had
 
 always
 
 been the practice in Delaware, for the senior execution to take. The junior might sell, but the avails were to be applied according to priority of lien, which was not affected by the stay. He admitted the law in England to be
 
 contra,
 
 but we had adopted only so much of it as suited our condition. He said our people could not bear the English rule; they must wait with their debtors. He cited 4
 
 Dallas Rep.
 
 167, 213, 358, to show that the Pennsylvania practice accorded with ours. 4
 
 Dallas,
 
 208, he said was a decision of the United States Circuit Court against him, but he hoped never to see the time when the courts of the United States should give law to the individual States.
 

 Ridgely,
 
 contra, contended that the practice had been unsettled here, and that the senior execution was clearly fraudulent as against the latter. The common law was the law of the land, and the English practice was wise, politic and well adapted to our condition. He cited the United States decision, and distinguished the other cases in Dallas, thus: where the prior execution was to have been levied on household goods, there the stay of sale was from sentiments of humanity, and he who delayed from such a motive should not lose by it; but wherever the levy was on merchandize, these motives could not induce a stay; and as the prior execution creditor thereby gave the debtor an ostensible ownership which operated as a fraud on others, he deserved to lose his lien.
 

 The court took time to consider of D; and afterwards directed the money to be applied to Starr & Co’s, execution. The substance of their opinion was: — “The common law of England is in force in this State only so far as it has been adopted in practice. It is perfectly well settled in England, that any stay of execution is
 
 in itself
 
 a badge of fraud, and consequently divests the execution of its
 
 oi'iginal priority,
 
 (2
 
 Tidd. Pr.
 
 920;
 
 Prec.
 
 
 *42
 

 Chan.
 
 286-7;) but a long course of practice lias, in this State, modified and in fact abrogated that rule. We are of opinion that a stay of execution is not
 
 per se
 
 a badge of fraud; other circumstances must appear to render it such.’-’