JAMES P. LOFLAND, d. b. appellant *vs.* WARREN JEFFERSON, p. b.
respondent.

Execution process can be issued only to the sheriff in office, or his " immediate " pre-
decessor.

A sheriff is not entitled to " dollarage " for money not made by him; unless it is paid
before the return day of his writ, or whilst he has process in hand, authorizing him
to levy the money.

A sheriff has no power to execute process, after the return day.

Payment to him when he has no writ in hand, authorizing the levying of the money,
will not discharge the debt.

SUSSEX.   October term, 1845.   This was an appeal from the
judgment of a Justice of the Peace, in an action of assumpsit, for
sheriff's fees, on execution process, sued out by the appellant, and
placed in respondent's hands, for execution.

The matter in dispute was a charge for dollarage on the amount
of an execution, at the suit of appellant, against L. Layton, which
was in the sheriff's hands more than thirty days, and then paid to
plaintiff, after the return day of the writ.

The judgment against Layton, was dated August 28, 1825 ; an
alias fi. fa. was sued out to October term, 1833, and placed in
sheriff Jefferson's hands ; it was returned " levied," and the costs en-
dorsed, $4 50.   Successive writs of venditioni exponas were issued to
the same sheriff, every term, up to October term, 1838, all of which
were returned, " goods unsold for want of buyers," except the last,
which was returned, " settled to plaintiff," and dollarage endorsed,
$24 15.   Warren Jefferson was elected sheriff, in Nov., 1832 ;
George Frame was elected in 1834 ; and Purnel Johnson, in Nov.,
1836.   These executions were levied on the defendant's goods, which
were advertised, but no sale was made, being stayed by orders of
plaintiff ; the last writ was held up by plaintiff's orders.   Sheriff
Jefferson sent him a statement of the debt and all costs, including the
dollarage, which plaintiff collected of Mr. Layton. and afterwards
refunded to him.   The writs were all delivered to sheriff Jefferson,
by order of the plaintiff ; who from time to time gave directions
about them to the sheriff.   The last writ was returnable to October
term, 1838 ; but it was not then returned.   The money was paid to
plaintiff, in 1840, or 1841, and sheriff Jefferson then returned it " set-
tled to plaintiff."   At the time it was issued, to wit : in July, 1838,
Purnel Johnson was sheriff of Sussex county, and Warren Jefferson
was not his immediate predecessor.

*Cullen.*—When a writ is placed in the hands of the sheriff, to levy money, and he retains it for thirty days, after which the money is paid to the plaintiff, the sheriff is entitled to his fees for dollarage. At common law, the sheriff is authorized to charge fees not only for what he does, but for what he could have done by virtue of the execution. Otherwise he would have an interest to push debtors to the extent of the law. And if an execution is placed in the sheriff's hands, and remains there thirty days, he is entitled to dollarage if the defendant pays the plaintiff ten years after, though the sheriff do not even make a levy. And it is not necessary that the process shall have continued in the sheriff's hands, all the time intervening between the first writ and the payment.

*Layton,* contra.—The sheriff derives all his authority from the law and his writ. He has no right to fees, unless as sheriff, or ex-sheriff. He is not entitled to any costs as such, for anything he may do as agent of the plaintiff. His costs are regulated by his official acts. If an execution be in the sheriff's hands thirty days, and be paid to the plaintiff afterwards, whilst the writ is in the sheriff's hands, and operative, he is entitled to dollarage, and not otherwise. The plaintiff has a right to stay his execution, or revoke it; and if he does so, the sheriff is not entitled to any dollarage. By the terms of the fee-bill, the sheriff is not entitled to any fee for any service not rendered, nor for any fee not endorsed at the time of the return. (*Dig.* 242.)

As to the holding writs up by the sheriff, beyond the return term, it is all illegal, and cannot be authorized by any orders of the plaintiff. The command of the writ, and the rules of court, require the writ to be returned *at the term.* There is no time marked for the return of this writ, and the legal presumption is, that it was returned at the October term, 1838; after that it was a dead writ, and the sheriff could do nothing under it. When this writ was returnable, and ought to have been returned, there was no dollarage due; for the debt was not paid for two years after; and at the time the debt was paid, W. Jefferson had no right to collect the money, or to charge fees. Even if he could afterwards earn fees, he would have forfeited them by neglecting to endorse them on the return to October term, 1838. The sheriff has no authority under the writ, after the time when it is returnable. Under this writ the sheriff could do no act after the 8th of October, 1838. (46 *Law Lib.* 94; *Sew. Shff.* 104; *Cro. Eliz.* 180; 2 *Esp. Rep.* 585; *Sid. Rep.* 229.) The sheriff's recognizance binds him to well and truly execute all process without delay. He is bound to return writs of fi. fa., on the

second day of the court to which they are returnable. (*Dig.* 454; *Ibid* 207-8; 2 *Harr. Rep.* 161.) Our law authorizes certain writs of execution to be issued to an ex-sheriff, that is, the *immediate predecessor* of the sheriff in office. This writ issued to Jefferson, when he was not such predecessor, and is illegal. (*Dig.* 211.)

When the judgment on which this writ was issued was paid by Mr. Layton to the plaintiff, there was no execution process in existence. The old sheriff, Jefferson, had no right to make any endorsement on a writ which either was returned, or should have been returned, two years before.

*Cullen.*—1st. Admitting that the last writ was issued improperly to a person who was not the *immediate* predecessor of the sheriff; this is the case of a plaintiff in an execution resisting the sheriff's claim to fees, on the ground that he was not the proper officer to whom the writ should have been issued. Yet the plaintiff himself had the writ directed to this officer. Shall he be permitted to deny it? It is not a question between the defendant and the sheriff.

2d. Poundage, by the common law, and dollarage, under our act of assembly, is due not merely upon the collection by the sheriff, of money, by sale or otherwise; but in every case where the debt is settled to the plaintiff, thirty days after levy. The sheriff is entitled to dollarage, even on an illegal writ, if the court has jurisdiction. Even where the execution was set aside.

The principle on which dollarage is allowed, is the sheriff's risk: After the levy he is responsible for the safe keeping of the property, and if he gets no dollarage, he incurs this risk without compensation. (*Wats. Shff.* 57-126; 2 *Tidd Pr.* 1039; 1 *Caine's Rep.* 192; 2 *Harrison's Dig.* 459; 5 *T. Rep.* 440; 17 *Wend. Rep.* 14; 9 *Ibid* 435.

A verdict was taken for plaintiff, for $33 45, if the court shall be of opinion that the plaintiff, as late sheriff, was entitled to dollarage on writ No. 87, to October term, 1838, under the proof in this cause; otherwise, for the sum of $10 10.

*By the Court.*—1. The first ground of defence is, that in respect to the last three writs the fees claimed cannot be recovered, because they were not issued to the sheriff in office, or his immediate predecessor in office, but to sheriff Jefferson, a previous sheriff.

We consider this mode of directing execution process irregular and illegal. Execution could be issued only to the sheriff in office, until by the act of 1788, authority was given to his "immediate"

predecessor in office to finish execution process begun by him; but this does not extend beyond the immediate predecessor, and these writs were irregularly issued to sheriff Jefferson. But they were so issued by the order of Doct. Lofland, the defendant here, and he ought not now to object to this irregularity, but should pay as he in fact received from L. Layton the fees endorsed on them, except the claim for dollarage.

2. The construction of the fee bill in reference the sheriff's right to dollarage is not without difficulty, as the provisions of the act seem at first view, and are perhaps in reality, inconsistent. Our duty is to give effect to the whole if we can, and if we cannot, to maintain the general purpose of the law, even if it necessarily conflicts with the apparent meaning of certain clauses of the act.

The first general principle is, that the sheriff's right to dollarage, as well as any other fee, is to be maintained under our act of assembly, and not by reference to any common law rules; and though it may well be, that in England many of the sheriff's perquisites arise from his extraordinary liabilities as a public officer, yet in this State his liabilities are not always the same, and his compensation is always derived under the act which fixes the fees of public officers.

That act is also to be taken strictly. It expressly declares (263,) that " no fee shall be allowed for any service until it shall be performed; every provision allowing a fee shall be construed strictly, and the fee under it shall not be allowed for any service which shall not come within the explicit meaning of the terms." Each service has its fixed fee : for levying an execution on goods, with inventory and appraisement; for advertising goods, so much for the first time, and so much for a second or third advertisement; and for selling goods on execution, what is called dollarage, at the rate of three cents per dollar on the money made by the sale, and legally applied to execution or to landlord's rent; but the sheriff shall not have dollarage on money applied to an execution in the hands of another officer, or to rent distrained by another officer: if an execution be levied on goods or chattels and settled without a sale, after the expiration of thirty days from the levy and notice, the sheriff shall be entitled to dollarage : the item of dollarage shall not accrue until sale or settlement as aforesaid. (*Dig.* 241.)

In the present case a levy was made on an execution at the suit of J. P. Lofland, the defendant, against Lowder Layton, previous to the October term, 1833, and the money was paid by the defendant in the execution to Doct. Lofland himself, in the year 1840 or 1841,

there being at the time no writ in the hands of sheriff Jefferson, or any of his successors, authorizing a collection of this debt from Mr. Layton. The last writ which issued was returnable to October term, 1838; to which term it ought to have been returned, with a certificate of what had been done by virtue of it up to that time, which would have embraced neither a sale of the goods, nor levy of the money, nor any other service entitling the sheriff to endorse a charge for dollarage.

The writ was then functus officio. Sheriff Jefferson had no right to sell upon it; nor any right to receive and give a discharge for the money. If the money had been paid to him by this defendant, it would not have satisfied the judgment in case the sheriff had not paid it over to the plaintiff.

Being thus properly returnable, and to be treated as if returned at the October term, 1838; with no act done by the sheriff entitling him to dollarage; and no further process directed to him under which he could earn the dollarage, the subsequent payment of the money by the defendant, L. Layton, to Doct. Lofland, did not entitle sheriff Jefferson to dollarage. It was not money levied by any execution process. This is proved by the fact, that if a subsequent writ had been issued to sheriff Steel, or sheriff Smith, and the money levied by a sale, he, and not sheriff Jefferson, would have been entitled to the dollarage. And even if an execution had been issued against Mr. Layton, by any other creditor, and delivered to sheriff Smith, by virtue of which he sold goods applicable to this execution, he, (if any one,) and not sheriff Jefferson, would be entitled to dollarage on the sum so applied to it.

This proves that sheriff Jefferson did not by the levy alone acquire a right to dollarage on this debt. Yet, it is said, that by the act of assembly, if an execution be settled without a sale after thirty days, the dollarage shall accrue. This must be taken in connection with the whole act, and must have reference to a writ in the sheriff's hands under which he might make a sale or levy the money. It is not so restricted in terms, but it is so by reference to the whole act. It is a provision for the benefit of the defendant; to take away any interest which the sheriff might have to make sale, and to save him his dollarage on a settlement without sale just as if he had sold. But this can only be whilst he has the right to sell. The right to dollarage cannot, by the levy, be vested whenever the debt may be settled; because even where a further writ issues in the same case to another sheriff, and the money is raised by a sale; the sheriff

selling gets the dollarage, and not the sheriff levying; much less shall the sheriff levying be entitled to dollarage at any time after, when the defendant voluntarily pays the debt to the plaintiff, if he could not get it even where the money is finally levied by pursuing the same process out.

The clause of the act of assembly which speaks of a certificate for dollarage received by the sheriff when there is no execution in his hands, if compatible with this opinion at all, has reference to the case where an execution has been levied and returned, and the property is sold by the same or another sheriff, and the proceeds applied to the returned execution : the officer applying it in that case gets the dollarage, and is bound to certify it to executions not in his hands.

*Layton*, for appellant.
*Cullen*, for respondent.