DANIEL J. SHORT, Sheriff of Sussex County, v. HARRY LANDES, Trading under the firm name and style of Landes Poultry Company.

(*June* 26, 1944.)

LAYTON, C. J., RODNEY and SPEAKMAN, J. J., sitting.

*Daniel J. Layton, Jr.*, for plaintiff.

*James A. Carey* for defendant.

Superior Court for Sussex County, No. 35, October Term, 1943.

RODNEY, J., delivering the opinion of the Court:

This case involves a consideration of some of the rights and duties accruing to or resting upon a Sheriff by virtue of his service of execution process. These rights and duties as existing in this State differ so materially from those existing at common law and from those obtaining in many American jurisdictions that some suggestion may be made of the differences having some materiality in the present proceeding.

At common law the goods of a defendant were bound by an execution from the teste date of the writ. This was found to be productive of great injustice, and by 29 *Car IIc*, 3, *Sec.* 16, the lien of such writ was made effective from the time of its delivery to the Sheriff. (*See* 11 *Eng. Rul. Cas.* 622.) This was our early law and enacted into our Statute by *Sec.* 5 *of Act of January* 29, 1829 (*Chap.* 126, *Vol.* 7, *Laws of Delaware*, p. 249). This was further limited and circumscribed in 1852 by *Chap.* 207, *Vol.* 12, *Laws of Delaware*, which added the provision "an execution shall from the time it is so delivered bind all the goods and chattels of the defendant within the bailiwick which shall be actually levied upon within sixty days thereafter." An execution therefore has a limited lien for sixty days, but to keep such lien and priority it must be followed by an actual levy within sixty days of its delivery to the Sheriff. (*Woolley on Del. Prac., Sec.* 1014.)

At common law it was the uniform practice for the Sheriff to remove the goods from the possession of the defendant and keep them until they were sold pursuant to the writ of execution. The leaving of the goods in the possession of the defendant was considered as a badge of fraud. After a levy was made the prompt sale while the goods were in the custody of the Sheriff was the almost uniform result.

In most American jurisdictions goods may now be left with the execution debtor, but often under limited circumstances. These cases are generally collected in a note in 86 *A. L. R.* 1412. Usually the defendant or other person, by practice or by statute, becomes the agent or appointed keeper or receiptor for the sheriff or officer making the levy. While many cases hold that mere delay in making the subsequent sale does not operate as an abandonment of the levy (21 *Am. Jur.*, p. 76; 15 *Standard Proc.* 989; 23 *C. J.* 437, 472, 518; 33 *C. J. S., Executions*, §§ 97, 114, 137), yet in most jurisdictions the intent to grant time to a debtor or to use the levy as security for a claim operates as an abandonment of the levy, so as to make it lose its priority over subsequent levies.

In this connection the law of Delaware, as established by practice and by statute, differs materially from other jurisdictions.

A long course of practice in Delaware has established that, after a levy, the property levied on may be left in the possession of the execution defendant, and no "badge of fraud" is shown thereby. As early as 1818 the Court in *Starr & Co. v. Lewis & Purden* held that a plaintiff could stay a sale under a levy, and that the property could be left with the defendant in the writ. This case was reported in a note found in *Houston v. Sutton*, 3 *Del.* (3 *Harr.*) 37, 40, and is also now found as *Starr & Co. v. Fisher & Shockley* in the new publication of 1 *Del. Cas.* 611.

The cited case was followed by *Houston v. Sutton*, (1839) 3 *Del.* (3 *Harr.*) 37; *Hickman v. Hickman*, (1842) 3 *Del.* (3 *Harr.*) 484; *State v. Records*, (1849) 5 *Del.* (5 *Harr.*) 146, and *Groves v. Bloxom*, (1867) 8 *Del.* (3 *Houst.*) 544. In *Sanders v. Clark*, 11 *Del.* (6 *Houst.*) 462, 472, it is said that the practice "may be called part of our common law."

In *Houston v. Sutton, supra*, 3 *Del.* at page 43, the mat-

ter was fully discussed, and Harrington, J., said that the danger of injury to others increases by the length of time accorded to the debtor by the stay of sale, and that "perhaps some limitation in point of time ought to be placed [upon it] by the Legislature."

This was done in 1852, and it will be noted has reference to "priority" of lien as against a subsequent execution creditor, and not to the "duration" of lien as against the defendant. In the *Revised Code of* 1852, page 405, it was enacted,

"No levy upon goods and chattels, made by virtue of execution process, shall be of any force or effect, as against a subsequent execution levied upon the same goods and chattels, for a longer period than two years from the making of such first mentioned levy; nor unless the execution, under which it is made, be continued by writs of venditioni exponas regularly issued from term to term of the Court."

This was changed as to time and the necessity of the Writs of Venditioni Exponas was eliminated by Act of January 31, 1862 (*Chap.* 207, *Vol.* 12) which provided:

"No levy upon goods and chattels, made by virtue of execution process shall be of any force or effect as against a subsequent execution levied upon the same goods and chattels for a longer period than three years from the making of such first mentioned levy."

This has since then remained our law, and is found in *Code of* 1935, *Sec.* 4868.

Under the language of the statute it has always been held that a Sheriff by a levy obtains a special property in the goods levied on, and as expressed by Judge Woolley in 2 *Woolley on Delaware Practice, Sec.* 1034,

"This property of the Sheriff and the lien of the levy maintain priority over subsequent executions levied upon the same goods for a period of three years."

No fact of the present case calls for any discussion of the question as to what acts being added to the leaving of property in the possession of a debtor after a stay of sale would constitute fraud upon subsequent creditors, as discussed in *Sanders v. Clark,* 11 *Del.* (6 *Houst.*) 462.

The foregoing differences between the Law of Delaware on the one hand and the principles of the common law and those existing in many American jurisdictions on the other, with reference to the rights and liabilities of a levying officer, are thus commented on because they have a bearing upon the "special property" which vests with such levying officer after levy made by him.

■ The general law is stated in *Watson on Sheriffs,* 191, as

"When the sheriff has duly seized goods under a writ of fieri facias he has such a special property in them as to enable him to maintain trespass or trover against any person who may take them out of his possession for he is answerable to the plaintiff for the value of the goods."

See also *Crocker on Sheriffs* (3rd Ed.), *Sec.* 826; 47 *Am. Jur.* 979; 57 *C. J.* 1098.

The special property existing in a sheriff in those goods and chattels levied on by him, however, grows out of and is in direct proportion to his liability or responsibility to the plaintiff for whom the levy was made, or to the defendant for an accounting of the goods. As stated in 2 *Anderson on Sheriffs, Sec.* 671,

"The reason of the rule is because the officer making the levy is accountable to the judgment creditor for the value of the goods and it would be unjust if he could not indemnify himself by the recovery of damages for the wrongful taking * * *."

In *Collins v. Smith,* 16 *Vt.* 9, it is said

"The principle is well settled that an officer, who attaches property, gains such a special interest in it, that he can maintain an action for it so long as he continues either liable to the attaching creditor for the same, or the owner for its return upon the dissolution of the attachment, and no longer."

In *Robins v. Brown*, 32 *La. Ann.* 430, it is said:

"A sheriff has a cause of action in damages or otherwise to protect his possession and to shield himself from liability; but this right of action is limited by the degree * * * of liability to be entailed on the sheriff should he illegally part with the property which it is his duty to hold."

In *Higdon v. Warrant Warehouse Co.*, 10 *Ala. App.* 496, 63 *So.* 938, 939, the Court says that a sheriff's

"right of action in every case, however, is dependent upon his liability over to some one else. He cannot, after he has been discharged from such liability, maintain the action, unless, of course, that discharge resulted from his payment of the liability."

In *Clark v. Norton*, 6 *Minn.* 412, 6 *Gil.* 277 at page 282, it is said:

"[that] the right of an officer to bring an action for goods levied upon by him, depends upon his special property and liability over;" and if he cannot be liable over to the plaintiff he cannot maintain the action.

As Perley, C. J., said in *Holt v. Burbank*, 47 *N. H.* 164,

"this special property depends on his liability to answer for the goods to the attaching creditor or to the debtor; when his liability is discharged his special property ceases."

See also cases collected in 25 *A. & E. Ency. of Laws* (2d Ed.), p. 709.

It is true that Professor Warren in "Qualifying as plaintiff in Conversion," 49 *Harvard Law Review* 1084, 1098, considers that an officer making a seizure under a writ is a proper representative of the interests of all parties concerned, and should be allowed to recover in trover without showing his personal responsibility for the value of the goods converted. Professor Warren, however, was merely discussing the question as to whether possession alone, without assertion of title, would be sufficient to sustain an action of trover. He concludes that such officer, having made a levy and taken the goods into his possession, represents both the plaintiff and defendant in the execution, and thereby obtains such a special property in the goods as to maintain trover for their conversion, regardless of his personal responsibility.

In 2 *Woolley Del. Prac., Sec.* 1034, it is said:

"Until * * * the levy the sheriff has no property in the goods bound by the execution that would support an action of replevin or trover but after a levy is made the sheriff has such a special property in the goods and chattels of the defendant as will maintain actions at law though the property levied on be left in the defendants custody."

In *Janvier v. Vandever*, 3 *Del.* (3 *Harr.*) 29, 34, it is said that a Sheriff after a levy "is responsible for the safe keeping and production of all the goods, and for their value at a fair public sale * * *."

The special property of the Sheriff in the goods levied on and the plaintiff's right to have them sold are of such importance that a statute makes it a misdemeanor to secrete, destroy, or remove from the county, without consent, any goods which have been levied upon. 2 *Woolley Del. Prac., Sec.* 1034; *Sec.* 5216, *Rev. Code* 1935.

The special property or qualified right which a Sheriff has after a levy made by him has sometimes been

spoken of as placing the property in "Custodia Legis." Thus in *Stockwell v. Robinson*, 14 *Del.* (9 *Houst.*) 313, 315, 32 A. 528, it is said:

"the goods * * * were seized by virtue of the attachment, which vests, of course, in the sheriff what is called a qualified right to these goods; in other words, he has the goods 'in custodia legis,'—that is in the custody of the law."

■ They are also, of course, after the levy and stay of sale so subject to existing process that they can be sold under a later Writ of Venditioni Exponas without the necessity of another levy.

Applying the foregoing principles to the present case we find the following: When the writ of fieri facias was issued to the former Sheriff, Pepper, he made the levy and left the property in the possession of the defendant in the writ. This, under the authorities, he could clearly do. As said in *Groves v. Bloxom*, 8 *Del.* (3 *Houst.*) 544,

"It was the usual practice both of sheriffs and constables in our State, to leave the goods and chattels levied on by them in the possession of the defendant and owner of them until the time of sale, but it was only by the permission of the officer that they so retained the possession of them, who was in the meanwhile responsible for the forthcoming of them at the time of sale, and in whose constructive possession and actual custody they remain from the date of the levy, in contemplation of law, and in consequence of which he has a perfect right at any time afterward, to take them into his actual possession, if he sees proper to do so."

■■ At the return term of the writ Pepper returned that he had made the levy with an inventory and appraisement, and also returned "Goods unsold by order of the plaintiff's attorney." This also is clearly permissible under Delaware practice. While the language of the writ of Fi Fa bears the instruction to the Sheriff that from the goods and

chattels, lands and tenements of the defendant he (the sheriff) should cause to be made the debt or damages of the plaintiff, and the legal command to have the money at the return term of the writ, yet since the execution is the process of the plaintiff it is under his control and he can give orders to the Sheriff to postpone or stay the sale. State. to Use of Roe v. Gemmill, 6 Del. (1 Houst.) 9, 15.

After the stay the Sheriff was still responsible for the production of the goods when required for sale, and because this responsibility is similar in character to that which had existed after the levy and before the stay of sale, so the same special property or qualified right which existed in the Sheriff after the levy remains in him while the responsibility itself continues.

After the stay of sale and before the issuance of any further writ looking toward a future sale, the Sheriff, Pepper, went out of office. What effect, if any, did this have?

In England at common law, and in many American jurisdictions, the Sheriff or officer who commenced the execution of the writ by the levy usually completed it by the sale, even though his term of office had expired between the levy and the sale. If the Sheriff having made the levy had not made the sale under the fieri facias, then to him was issued the Venditioni Exponas as a writ of compulsion. Upon failure of the levying officer to make sale under this latter writ, the execution creditor could have a writ of "distringas nuper vicecomitem" by which the new sheriff was commanded to distrain the old sheriff to sell the goods. Watson on Sheriffs, 189; Wilbraham v. Snow, 2 Saunders 47, 85 Eng. Rep. 624; Rogers v. Darnaby, 4 B. Mon. (Ky.) 238; 14 Halsbury Laws of Eng. (Hailsham Ed.) 72.

This seems not to have been the law in Delaware, but here the sales have usually been made by the Sheriff in office, even though the levy was made by his predecessor. Section 4814, Revised Code of 1935, provides:

"A writ of venditioni exponas for the sale of any goods and chattels, lands and tenements, taken in execution by virtue of a writ of fieri facias, may be issued and directed either to the sheriff in office, or his immediate predecessor (he having seized and taken in execution such goods and chattels, lands and tenements) at the election of the plaintiff in the execution; and all proceedings had, by virtue thereof, shall be valid in law."

The statutory provision is a very old one, having been adopted October 28, 1788, *Vol. 2, Laws of Delaware,* p. 933. When first adopted it had as a preamble the following statement:

"Whereas it may be inconvenient in many cases to direct writs of venditioni exponas to the sheriff in office where executions have been or may be laid by his predecessor and no sales made or actually had of the property so taken in execution   *   *   *."

This rather enigmatical statement is made more clear by *Lofland v. Jefferson, 4 Del. (4 Harr.)* 303, 305, where the Court said:

"Execution could be issued only to the sheriff in office, until by the act of 1788 authority, was given to his 'immediate' predecessor in office to finish execution process begun by him   *   *   *."

To Pepper, the former Sheriff making the levy, then, there could by the express terms of the statute have been issued the Venditioni Exponas compelling the sale of the goods levied on, and upon Pepper just before he went out of office rested the responsibility for the production of the levied on goods, when required for the purposes of sale. In view of the fact that neither Pepper nor anyone in privity with him is connected with the present proceedings, it is not appropriate to consider either any responsibility which may still rest upon him, or any rights still accruing to him

by virtue of the levy made by him. The declaration in the present case indicates that the conversion of the goods, if any, took place in the month of April, 1942, while Pepper was still in office as Sheriff. In *Polley v. Lenox Iron Works,* 86 *Mass.* (4 *Allen*) 329, Polley, an officer, had made an attachment and left the goods with the defendant in the writ. The goods subsequently disappeared. After judgment was obtained on the attachment and upon execution thereon the goods could not be found. After the attachment and conversion Polley resigned and left the State. It was held that the conversion having occurred while Polley was in office the action was properly brought by him. See also *Tukey v. Smith,* 18 *Me.* 125, 36 *Am. Dec.* 704; *Bond v. Padelford,* 13 *Mass.* 394.

The plaintiff contends that there existed in Pepper, the former Sheriff, a right of special property in the goods levied upon and that, upon the expiration of his term in office, this right passed to his successor in office, and cites *Fockler v. Martin,* 32 *Iowa* 117. There a specific statute required that a "retiring sheriff shall deliver to his successor all books and papers pertaining to the office, and property attached and levied upon."

In Delaware there is no statute or practice by which a Sheriff going out of office is either required to transfer to his successor the goods levied on by him, or which has a bearing upon any relief from responsibility for such goods.

Short, the present Sheriff and present plaintiff, had never made a levy, and until the issuance of the Venditioni Exponas had no connection with the things levied on. Any responsibility attaching to him came by virtue of the writ of Venditioni Exponas, and not by any former writ. It was his duty to sell the goods if they were to be found. As appears by his return no goods were found and consequently no liability or responsibility attached to Short by reason of that writ coming into his hand. A levying of-

ficer is under a responsibility to both the plaintiff and the defendant in the writ of execution. Short was under no responsibility to either, nor could he be considered the representative of the latter, and there was no reason for the existence of any special property in the goods, which is necessary to sustain the action of trover. It appears from the declaration that the conversion, if any, took place before any execution process was issued to Short, or before he even went into office.

If Short, the present Sheriff and present plaintiff, could recover in the present action, to whom would the damages belong? He could not return such damages in connection with any execution issued to him, and neither he nor his sureties are under any responsibility in connection with such damages to the plaintiff in the execution, nor to the defendant therein. Assuredly, he has no right of action for his own benefit.

The Demurrer must be sustained.