417 P.2d 444

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Ward WEBER, Defendant-Appellant.**

**No. 7983.**

Supreme Court of New Mexico.

Aug. 22, 1966.

Toulouse, Ruud, Gallagher & Walters, J. E. Casados, Albuquerque, for appellant.

Boston E. Witt, Atty. Gen., Paul J. Lacy, Myles E. Flint, Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION·

OMAN, Judge, Court of Appeals.

On May 26, 1964 an information was filed charging defendant-appellant with the crime of forgery. He was found guilty by the jury, the trial court entered judgment and sentence accordingly, and appellant has taken this appeal from the judgment. He asserts three points relied upon for reversal, and these points will be disposed of in the order of their presentation in the brief in chief.

On April 22, 1964 a 1956 Cadillac automobile, belonging to Mr. E. P. Lynn, was levied upon under a writ of execution issued out of the Justice of the Peace court of J. W. Maxfield. Appellant was employed as a clerk by this Justice of the Peace. The automobile was taken into custody by a deputy sheriff pursuant to the levy.

Shortly thereafter, Mr. Mel Chavez heard that appellant had a car for sale and he talked with appellant about purchasing the Cadillac. Appellant told him that he could not sell the car at that time.

About this same time Mr. Lynn talked to appellant about redeeming the car, and was advised by appellant that he had thirty days from April 22 within which to raise the amount owing under the judgment. Mr. Lynn told appellant that at the time he was unable to raise the full amount, but that he was going to try and raise it.

At the time a security agreement covering the car was held by the Bank of New Mexico, and Mr. Lynn was three months delinquent in his payments to the bank. Appellant learned of this and on April 30, 1964, purchased the note and security agreement from the bank. He took an assignment of all the bank's right, title and interest in and to the security agreement. On this same date Mr. Lynn observed his car in a service station and

noted that the tires were being removed and replaced by smooth tires.

On May 1, 1964 appellant then sold the car to Mr. Chavez. He admittedly signed the name "E. P. Lynn" as seller on the assignment form appearing on the reverse side of the original certificate of title, completed the same showing Mel A. Chavez as the purchaser, signed his own name as the notary public before whom the same was subscribed and sworn to by "E. P. Lynn," and then affixed his notary seal. He delivered the car and certificate of title to Mr. Chavez, but told Mr. Chavez not to file the certificate of title until he gave Mr. Chavez an ok.

Mr. Lynn knew nothing about this sale of his car, but on May 2 he asked appellant about the tires being taken from the car, and appellant admitted he had given permission to the deputy sheriff, who picked up the car under the writ of execution and who worked out of Judge Maxfield's court, to take two of the tires. All four were found on this deputy's car.

Mr. Chavez, after taking possession of the car, noted the tires were not the same as had been on it when he first looked at it. He went back to appellant, called this to his attention, and the new tires belonging to Mr. Lynn were then put back on the car.

On May 9, 1964 Mr. Lynn observed his car parked at Station D of the United States Post Office. He telephoned the Albuquerque City Police and a Sergeant Chappell arrived in response to the call. As Mr. Chavez, who is a mailman, drove away, the Sergeant stopped him, and Mr. Chavez thereupon produced the certificate of title. At that time Mr. Lynn observed that his name had been written in the form of assignment as the seller, and he advised Sergeant Chappell that this was not his signature.

On May 16 Mr. Lynn went to the office of an attorney, at the direction of appellant, paid off the balance owing on the vehicle, and recovered possession thereof.

There are some discrepancies in the evidence as to the price paid by Mr. Chavez for the car. Appellant said it was approximately $585. Mr. Chavez said it was about $525. Mr. Chavez was given a check for $528.95 by appellant after Mr. Chavez returned the car. There was evidence that the amounts owing on the note, the judgment, and costs totaled $497.95.

Appellant's first point is that he " * * was entitled to a directed verdict upon failure of the state to prove the essential element of intent to defraud or injure as required in the crime of forgery." 

Appellant was charged and convicted of a violation of the provisions of § 40A–16–9, N.M.S.A.1953 which are as follows:

"Forgery—Forgery consists of:

"A. falsely making or altering any signature to, or any part of, any writing

purporting to have any legal efficacy with intent to injure or defraud; or

"B. knowingly issuing or transferring a forged writing with intent to injure or defraud.

"Whoever commits forgery is guilty of a third degree felony."

■ It is admitted by appellant that he falsely signed the name "E. P. Lynn" to the assignment of title, and that he falsely showed that the same had been acknowledged before him as a notary public. Thus, as appellant asserts, the only question under this point is whether the evidence was sufficient to support a finding of "intent to injure or defraud." We are of the opinion that the evidence amply supports such an intent.

■ The crime of forgery was completed when the false-making of the signature with intent to injure or defraud had been accomplished, and an injury or loss need not actually have resulted. State v. Garcia, 26 N.M. 70, 188 P. 1104; State v. Smith, 32 N.M. 191, 252 P. 1003; Hurst v. State, 1 Ala.App. 235, 56 So. 18; State v. Laborde, 120 La. 136, 45 So. 38; People v. Esrig, 240 App.Div. 300, 270 N.Y.S. 372, II Wharton, Criminal Law and Procedure, § 6223 at 397 (12th Ed.1957); Clark and Marshall, Crimes, § 12.33 at 844 (6th Ed. 1952).

However, there is evidence that Mr. Lynn actually sustained injury or loss in more than one respect.

His automobile and the false assignment were delivered into the possession of Mr. Chavez, who made use of the same for at least nine days. The evidence is that his vehicle was worth from $600 to $700. Appellant undertook to sell the vehicle for something between $525 and $585. The total amount owing by Mr. Lynn on the note and the judgment, including costs, was $497.95. Appellant neither paid nor offered to pay the difference to Mr. Lynn. Under the execution Mr. Lynn was entitled to have the car sold at public sale in the manner and after the notice prescribed by §§ 24-2-1, 24-2-4, and 36-6-5, N.M. S.A.1953, and it can hardly be contended that appellant's conduct was not designed to deprive Mr. Lynn of these rights.

However, even if it could properly be said that appellant, as the secured party, legally took possession of the car pursuant to the provisions of § 50A-9-503, N.M.S.A. 1953, and was thus entitled to dispose of the same by private sale, pursuant to the provisions of § 50A-9-504(3), N.M.S.A. 1953, still he failed to give reasonable notification of the time after which the sale would be made. He also failed to account to Mr. Lynn for the surplus money received from the sale to Mr. Chavez, as required by § 50A-9-504(2), N.M.S.A. 1953.

The evidence was clearly sufficient to support a finding of intent to wrongfully or fraudulently deprive another of a law-

ful right, interest or property in accordance with the decisions in the cases of People v. Leach, 168 Cal.App.2d 463, 336 P.2d 573; State v. Clayton, 236 La. 1093, 110 So.2d 111, and State v. Harris, Mo., 313 S.W.2d 664 (1958), relied upon by appellant. See also People v. Esrig, supra, and Hurst v. State, supra.

■ An appellate court will not review the evidence on appeal, except to determine whether the verdict is supported by substantial evidence. State v. Fields, 74 N.M. 559, 395 P.2d 908; Wilcoxson v. United States, 231 F.2d 384 (10th Cir. 1956), cert. denied, 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469. When, as in the present case, the verdict is supported by substantial evidence, it will not be disturbed. State v. Mesecher, 74 N.M. 510, 395 P.2d 233; State v. Crouch, 75 N.M. 533, 407 P.2d 671.

The second point relied on for reversal is that the court erred in refusing to give instructions on appellant's theory of the case, in giving abstract statements of the law in instructions which somewhat relate to appellant's theory, and in giving an instruction on a false and prejudicial issue. He first complains of the court's failure to give his requested Instruction No. 6, which was as follows:

"6—You are instructed that, if you should find from all of the evidence and the law of the State of New Mexico

as I have given it to you, that the defendant Weber had, through the assignment of the bank because of the default under the terms and conditions of the bank's security instrument, and through the execution from the Justice of the the Peace Court, legal possession of the automobile in question, and therefore had both legal and equitable title in the automobile, insofar as the law is concerned, and could therefore do with the automobile as he wished without the necessity of securing any signed instrument or bill of sale from E. P. Lynn, and that defendant Weber, under the law of the State of New Mexico, could have obtained title from the State upon proper application, then you shall find that the State has failed to prove the intent of defendant to injure or defraud E. P. Lynn, and further, that they have failed to prove the legal efficacy of the writing herein charged, and you shall return a verdict of acquittal for defendant."

■■ Appellant must fail in this contention, because this requested instruction is not a correct statement of the law. He could not possibly have come into legal possession of the automobile "through the assignment of the bank * * * and through the execution from the Justice of the Peace Court * * *" The possession of the vehicle was in custodia legis, and the appellant could not have come into legal possession through the execution, ei-

ther in an individual capacity or as an employee of the Justice of the Peace. §§ 22–1–1, 24–2–1, 24–2–2, 24–2–3, and 24–2–4 N.M.S.A.1953; Short v. Landes, 42 Del. 510, 39 A.2d 17; Alliance Loan & Inv. Co. v. Morgan, 154 Neb. 745, 49 N.W.2d 593.

Nor does it follow that he "* * * therefore had both legal and equitable title * * * and could therefore do with the automobile as he wished * * *" As above stated, under our consideration of appellant's Point I, Mr. Lynn did have some legal rights and interests in the vehicle. He was not, either by reason of the levy of the execution or by his defaults under the note and security agreement, completely divested of all rights and interests in the automobile, and the appellant was not, by reason of either such levy or defaults, vested with full power to do with the automobile as he wished.

█ It is not error for the trial court to refuse a tendered instruction on a defense, if the instruction does not correctly state the applicable law. State v. Selgado, 76 N.M. 187, 413 P.2d 469 (1966).

█ We are of the opinion that the court, by its Instructions Nos. 9, 10, 10A and 11 properly covered the defendant's theory of the case. Defendant made no objections to these instructions, other than an objection that Instruction No. 10A was not as complete as appellant's requested Instruction No. 10. He does not raise this question on appeal. His argument on appeal is that Instruction No. 9, though a correct statement of the law as an abstract principle, had no meaning because it was not accompanied by a direction of the jury's attention to the facts which constituted his defense. As already stated, he made no objection to this instruction and he said nothing about the failure of the instruction to direct the jury's attention to any facts. Even if we were to agree with appellant, which we are not inclined to do, still he cannot be heard to complain, since he failed to object to the instruction and thus, to alert the mind of the court to the claimed error. See State v. Compton, 57 N.M. 227, 257 P.2d 915; State v. Clarkson, 58 N.M. 56, 265 P.2d 670; State v. Trujillo, 54 N.M. 307, 224 P.2d 151.

His final complaint about the instructions is that the court's Instruction No. 8, although:

"* * * a true statement of the law as to goods taken in execution, * * * is inaccurate if applied to the actions required by, or the rights of, one who has repossessed under a defaulted security agreement. * * *"

The court's Instruction No. 8 is as follows:

"INSTRUCTION NO. 8—You are instructed that the New Mexico Statutes require any goods taken in execution to be offered to public sale for cash to the highest bidder.

"You are further instructed that the New Mexico statutes require that when the value of the property to be sold on execution exceeds $300 the date of the sale and the description of the goods to be sold must be published in a newspaper once a week for four consecutive weeks."

██ Appellant's position is that he had repossessed the automobile " * * * under a defaulted security agreement," and, therefore, had " * * * a right to dispose of the collateral [automobile] by private as well as public sale, § 50A–9–504(3), N.M. S.A., (1953)." A secured party may recover possession of a chattel by replevin from a judicial officer who has properly taken possession thereof under execution. Personal Fin. Co. of St. Louis v. Endicott, Mo.App., 238 S.W.2d 51 (1951); Yellow Mfg. Acceptance Corp. v. Rogers, 235 Mo. App. 96, 142 S.W.2d 888; Burke v. First Nat. Bank, 197 Okl. 52, 168 P.2d 285. Possession could undoubtedly be properly obtained by the secured party from the custody of the law by other means than replevin, such as by abandonment or release of the levy. However, in this case the automobile was never properly taken from the custody of the court, and there is nothing to indicate that it was ever released from the execution lien, until it was returned to Mr. Lynn on May 16.

██ We are of the opinion that the instructions, when read and considered as a whole, fairly and correctly stated the law applicable to the facts in this case, and nothing more was required. State v. Fields, supra.

Appellant's third point is that: "It was prejudicial error for the court to admit evidence of subsequent acts which were not relevant or material to the crime charged."

He makes no reference in his argument by way of summary, or otherwise, to the specific subsequent acts to which he is referring. He merely states that: "Over objections by appellant, evidence was introduced of subsequent acts of the defendant." He then refers to page 45 of the transcript. A reference to this page of the transcript fails to reveal anything concerning any "acts of the defendant," and in fact consists of one question asked Mr. Lynn concerning what happened on May 25, and his answer, which was never completed, states:

" * * * I went down to Frontier Motor Company to go on duty and I was—immediately there were two deputies from Judge Maxfield's office came down * * * "

The other matters appearing on page 45 of the transcript are an objection by appellant, the announcement by the court to the jury of a recess; an inquiry by the court of the District Attorney concerning other testimony he intended to elicit from Mr. Lynn relative to things that occurred after May 1, 1964, and a portion of a statement by the

District Attorney concerning events which occurred on May 25, and which concerned Mr. Lynn's arrest under a "* * * warrant being issued out of Judge Maxfield's Office."

The only other reference in the brief in chief to the transcript is a reference to page 113. The matters appearing thereon, other than a portion of the state's requested instructions, is an announcement by the court of his denial of appellant's motion for a directed verdict, and a statement by the court that he:

"* * * allowed the testimony of subsequent events on the basis of the cases produced by the District Attorney's office, showing that they were admissible on the question of intimidation or duress, directed to witnesses for the State and also the prosecuting witnesses. * * *"

In the answer brief the appellee undertook to summarize, with transcript references, what it apparently understood were the claimed subsequent acts to which appellant had reference. Appellant, in his reply brief, commences his argument under this point by stating: "Appellee's recitation of the facts of Weber's 'harrassment' is made from whole cloth."

He again fails to state what evidence of his acts the court improperly admitted. His only reference to the transcript concerns testimony by himself to the effect that he had nothing to do with the issuance of the warrant or the arrest of Mr. Lynn. This testimony was offered by him and was in response to questions propounded to him by his own attorney.

In view of this, we are at a loss to know what evidence of his subsequent acts he claims was improperly admitted. We will not search the record in an effort to try to determine what appellant has in mind. The duty was on him to point out specifically the evidence which he claimed was erroneously admitted and the court's rulings thereon. Mogollon Gold & Copper Co. v. Stout, 14 N.M. 245, 91 P. 724. See also J. B. Colt Co. v. Chavez, 34 N.M. 409, 282 P. 381. This court will not search the record to find error upon which the trial court may be reversed. State ex rel. Wilson v. Board of County Comm'rs., 62 N.M. 137, 306 P.2d 259; Petty v. Williams, 71 N.M. 338, 378 P.2d 376.

Every presumption favors the correctness of any ruling or decision of the trial court, and a party alleging error must be able to point clearly to it. Mitchell v. McCutcheon, 33 N.M. 78, 260 P. 1086. See also Rhodes v. First Nat. Bank, 35 N.M. 167, 290 P. 743; Irwin v. Lamar, 74 N.M. 811, 399 P.2d 400.

Finding no error, it follows that the judgment must be affirmed.

It is so ordered.

CARMODY, C. J., and CHAVEZ, J., concur.