271 P.2d 827

**BREITHAUPT v. ABRAM.**

No. 5696.

Supreme Court of New Mexico.

June 15, 1954.

F. Gordon Shermack, Santa Fe, for petitioner.

Richard H. Robinson, Atty. Gen., Walter R. Kegel, Fred M. Standley, Asst. Attys. Gen., Santa Fe, for respondent.

FOX, District Judge.

This is an original proceeding in habeas corpus brought by the petitioner, Paul H. Breithaupt, against the Warden of the New Mexico State Penitentiary, Morris Abram, respondent.

The petitioner was the driver of a pickup truck which collided with another motor vehicle. The collision resulted in the death of three persons all of whom were riding in the vehicle with which the petitioner's pickup collided. A pint bottle containing about an inch of whiskey was found in petitioner's vehicle and the odor of alcoholic liquor was noticed on petitioner's breath. The petitioner was taken to the hospital following the accident and there, and while petitioner was unconscious, a blood sample of about 20 ccs was withdrawn by the doctor on duty at the direction of a state patrolman. The blood sample was found to contain 17% alcohol. This percentage was, in the opinion of the doctor who testified at the trial, sufficient to cause the petitioner to be under the influence of alcohol. The details of the collision are purposely omitted as being of no value in a determination of the case. The petitioner was charged with the crime of involuntary manslaughter and convicted. No appeal was taken from petitioner's conviction in the district court and the time for such appeal has expired.

The points upon which petitioner relies as grounds for the issuance of the writ are:

"1. The time for an appeal or writ of error having passed, habeas corpus is the proper remedy to raise the issue of denial of due process.

"2. The admission of evidence based on the results of a blood test made of a blood sample taken from the petitioner while he was unconscious, the use of which was protested both at the preliminary hearing and at the trial in district court, was a denial of due process."

More particularly, petitioner contends that the facts herein amount to compelling him to give evidence against himself, which evidence has been obtain by an unlawful search and seizure in violation of Amendments 4, 5, and 14 of the United States Constitution, and Article 2, Section 18 of the Constitution of the State of New Mexico.

The record shows, without dispute, that the petitioner during the course of his trial interposed timely objections to the admission of evidence in respect to the blood test and the results of such test on the ground that the admission of such evidence would be a violation of the self-incrimination provisions of our state constitution.

■ The decision of the court in this case will be restricted to a consideration of whether or not the taking of the blood sample in question and the admission of the results of a test made of such sample in evidence at the trial of this cause was a denial of due process under the provisions of the 14th Amendment of the Constitution of the United States. It is conceded by the respondent and this court that a review of this question may be made by this court in a habeas corpus proceeding. See Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; U. S. v. Smith, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610; Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356; Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61; Huffman v. Alexander, 197 Or. 283, 251 P.2d 87, 253 P.2d 289; Commonwealth ex rel. Johnson v. Burke, 173 Pa.Super. 105, 93 A.2d 876; and Ex parte Moutaw, Okl.Cr. 1951, 236 P.2d 509.

The case upon which the petitioner chiefly relies is Rochin v. California, supra. In the Rochin case, three deputy sheriffs, upon receipt of information that the petitioner, Rochin, was selling narcotics, entered the petitioner's dwelling without warrant or authorization and then forced open the door of Rochin's room where they found Rochin sitting on his bed. The officers spotted two capsules on a table by the bed but Rochin seized them before the deputies were able to so do. Rochin put the capsules in his mouth and a struggle ensued but the officers' attempt to extract the capsules from Rochin's mouth was unsucessful. Rochin swallowed the capsules. The officers then handcuffed Rochin and took him to a hospital where, at the direction of one of the officers, a doctor forced an emetic solution through a tube into Rochin's stomach and against his will. This action produced vomiting and two capsules containing morphine were found in the vomited matter. Rochin was brought to trial and convicted on a charge of possessing a preparation of morphine, contrary to state law. The chief evidence against him was the two capsules which were admitted over Rochin's objection. The case was appealed to the Supreme Court of the United States where it was held that Rochin had been denied due process of law, in violation of the Federal Constitution and the case was reversed.

Due process is a legal proposition of difficult definition. In order to more clearly

appraise the meaning and intent of the due process clause and the decision in the Rochin case, supra, in respect to the matter of due process, the following language from the majority opinion is quoted [342 U.S. 165, 72 S.Ct. 208]:

"Regard for the requirements of the Due Process Clause 'inescapably imposes upon this Court an exercise of judgment upon the whole course of the proceedings (resulting in a conviction) in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses.' Malinski v. New York, 324 U.S. [401] at pages 416–417, 65 S.Ct. [781] at page 789 [89 L.Ed. 1029]. * * * Due process of law is a summarized constitutional guarantee of respect for those personal immunities which, as Mr. Justice Cardozo twice wrote for the Court, are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental', * * * or are 'implicit in the concept of ordered liberty'.

\* \* \* \* \* \*

"Applying these general considerations to the circumstances of the present case, we are compelled to conclude that the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically. This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation.

" \* \* \* Due process of law, as a historic and generative principle, precludes defining, and thereby confining, these standards of conduct more precisely than to say that convictions cannot be brought about by methods that offend 'a sense of justice.' "

It should be noted that in the case of Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, the majority held that the conviction by a state was not a denial of due process under the 14th Amendment of the United States Constitution solely because evidence admitted by the trial court was obtained under circumstances which would have rendered it inadmissible in a prosecution for violation of a Federal law in a Federal court because of an infraction of the 4th Amendment of the United States

Constitution as applied in the case of Weeks v. U. S., 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B, 834, Ann.Cas. 1915C, 1177. In the opinion in the Wolf case, supra, it was stated that a clear majority of the state decisions have rejected the doctrine of the Weeks case, supra, including New Mexico in the case of State v. Dillon, 34 N.M. 366, 281 P. 474, 88 A.L.R. 340.

The two New Mexico decisions dealing with the matter of admission of evidence obtained in violation of a defendant's constitutional rights are the Dillon case, supra, and State v. Barela, 23 N.M. 395, 168 P. 545, L.R.A. 1918B, 844. The Barela case, supra, held that a law officer may force a suspect to remove his shoes and compare them with tracks found near the scene of the crime. The court in the Barela case made the distinction between real evidence and oral evidence obtained by compulsion and held that the self-incrimination privilege contained in Article 2, Section 15 of the New Mexico Constitution was not violated. The court went on to hold that the fact of the evidence being obtained by unlawful search and seizure did not render it inadmissible inasmuch as the method used in obtaining the evidence does not affect its admissibility. In the Dillon case, supra, this court held that liquor seized under an illegal search warrant is admissible as the use of such evidence was not in violation of constitutional immunities from unreasonable search and seizure and compulsory self-incrimination as provided in Sections 10 and 15 of Article 2 of the New Mexico Constitution.

What then is the effect of the Rochin case? A recent California case, People v. Haeussler, 41 Cal.2d 252, 260 P.2d 8, dealing with a factual situation very nearly identical to the case here to be decided, and decided after the decision by the United States Supreme Court in the Rochin case, supra, held that the doctrine of the Rochin case did not apply. The court in the Haeussler case, supra, interpreted the Rochin decision as applying the due process clause only where there is such conduct as amounts to the exertion of a brutal and shocking force to acquire evidence. If such conduct exists then the due process clause should be brought into play to invalidate any conviction based upon the use of such evidence.

For other discussions and interpretations of the Rochin decision see Beauharnais v. Illinois, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; Brock v. North Carolina, 344 U.S. 424, 73 S.Ct. 349, 97 L.Ed. 456; Albertson v. Millard, D.C., 106 F.Supp. 635; State of Arkansas for Use and Benefit of Temple v. Central Surety and Ins. Corp., D.C., 102 F.Supp. 444; People v. Sica, 112 Cal.App.2d 574, 247 P.2d 72; Wash.U.L.Q., 1952, 471; 9 Wash. & Lee L.Rev. 192; 3 Syracuse L.Rev. 378; 4 Stan.L.Rev. 591; 6 Rutgers L.Rev. 612; 27 Notre Dame Law

453; 23 Miss.L.J. 293; 50 Mich.L.Rev. 1367; 66 Harv.L.Rev. 122; 15 Georgia B.J. 86; 21 Ford.L.Rev. 287; and 40 Calif. L.Rev. 311.

The California court went on to state affirmatively in the Haeussler case, supra, that a blood test taken in the usual manner is not in and of itself so brutal and shocking as to warrant the application of the Rochin doctrine. With this position we agree.

To better understand the view of the majority opinion in the Haeussler case, supra, as to the Rochin case, supra, the following is quoted therefrom 260 P.2d at page 12:

"The essence of the Rochin decision is in the court's reference to Brown v. State of Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682, and other coerced confession cases. In the Brown case, a conviction based upon a confession obtained by torture was reversed because such a practice amounted to a wrong 'so fundamental that it made the whole proceeding a mere pretense of a trial and rendered the conviction and sentence wholly void'. 297 U.S. at page 286, 56 S.Ct. at page 465. So, in the Rochin case, the court said: 'Use of involuntary verbal confessions in State criminal trials is constitutionally obnoxious not only because of their unreliability. They are inadmissible under the Due Process Clause even though statements contained in them may be independently established as true. Coerced confessions offend the community's sense of fair play and decency. So here, to sanction the brutal conduct which naturally enough was condemned by the court whose judgment is before us, would be to afford brutality the cloak of law. Nothing would be more calculated to discredit law and thereby to brutalize the temper of a society.' 342 U.S. at pages 173–174, 72 S.Ct. at page 210, 96 L.Ed. 183. In brief, the Rochin case holds that brutal or shocking force exerted to acquire evidence renders void a conviction based wholly or in part upon the use of such evidence.

"* * * the Rochin opinion does not rest upon the premise that the taking of evidence from the person of a defendant or by entry into his body is the decisive factor. Instead, the entire course of conduct was examined and found to be brutal and shocking. The court disclaimed any intent to fix rigidly the confines of due process by asserting that they must remain 'indefinite and vague'. That blood tests and similar techniques may stand against constitutional objection is suggested by the statement: 'We therefore put to one side cases which have arisen in the State courts through use of modern

methods and devices for discovering wrongdoers and bringing them to book. It does not fairly represent these decisions to suggest that they legalize force so brutal and so offensive to human dignity in securing evidence from a suspect as is revealed by this record.' 342 U.S. at page 174, 72 S.Ct. at page 210."

Returning then to the specific question before the court, it would seem clear that unless there is to be a departure by this court from the principles laid down many years ago in the Barela and Dillon cases, supra, then the petitioner's application must fail. It is true that the patrolman directing the withdrawal of the blood sample appears to have violated certain of petitioner's rights but the admission of the disputed testimony is not thereby prohibited by the decisions of this court. Compulsory or involuntary testimony from a defendant may and should be excluded but the rule in this jurisdiction has not been extended to cover real evidence or the case at hand.

We do not take issue with the results of the Rochin decision, supra. Any radical departure from traditional concepts of justice and fairness should find neither solace nor condonation in the courts. A conviction based upon facts amounting to a denial of due process should not be allowed to stand. This court does not, however, accede to the petitioner's proposition. The decisions of this state and a clear majority of our sister states are aligned against the contention of the petitioner, in the absence of facts sufficient to draw the case within the orbit of the due process clause as applied in the Rochin case. The petition for a writ of habeas corpus is therefore denied, and

It Is So Ordered.

McGHEE, C. J., and COMPTON, LUJAN and SEYMOUR, JJ., concur.

SADLER, J., absent from the state, did not participate.