395 P.2d 908

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Joe Francis FIELDS, Defendant-Appellant.**

**No. 7439.**

Supreme Court of New Mexico.

Oct. 19, 1964.

Ward, Potter & Payne, Lovington, for appellant.

Earl E. Hartley, Atty. Gen., Frank Bachicha, Jr., Wayne C. Wolf, Asst. Attys. Gen., Santa Fe, for appellee.

CHAVEZ, Justice.

This is an appeal from a conviction of the crime of involuntary manslaughter, arising out of an automobile accident which occurred on U. S. Highway 180 at a point some five and two-tenths miles from the west city limits of Hobbs, New Mexico.

The information accused the defendant, Joe Francis Fields, of the crime of manslaughter, contrary to § 40–24–7, N.M.S.A., 1953 Comp., alleging that, on November 10, 1962, defendant unlawfully killed Dan Wallace Holladay in Lea County, New Mexico. Defendant moved for a bill of particulars, contending that the information did not disclose whether defendant was being charged with voluntary manslaughter or involuntary manslaughter and, if the charge was involuntary manslaughter, whether the charge was based upon the commission of an unlawful act not amounting to a felony, or the commission of a lawful act in an unlawful manner or without due caution or circumspection.

The state responded by filing a bill of particulars charging defendant with involuntary manslaughter in the commission of an unlawful act, or acts not amounting to a felony, to-wit:

" \* \* \* the defendant did operate an automobile upon the public highway while under the influence of intoxicating liquor, contrary to Section 64–22–2, New Mexico Statutes Annotated 1953, as amended, said illegal act not amounting to a felony, and that while so operating said automobile, he did strike a motor vehicle containing Dan Wallace Holladay and that the said Dan Wallace Holladay did then and there die and that said unlawful act was the direct and proximate cause of the death of said decedent."

and of the crime of reckless driving, contrary to § 64–22–3, N.M.S.A., 1953 Comp. The jury rendered a verdict of guilty of involuntary manslaughter and of reckless driving. From this conviction, defendant appeals.

Officer Allen W. Jones of the New Mexico state police was called as a witness for the state and testified that he was the investigating officer; that the accident occurred at a point five and two-tenths miles from the west city limits of Hobbs, New Mexico, on U. S. Highway 180, hereinafter referred to as the Carlsbad road; that the highway in the general area of the accident was straight and runs east and west, with two twenty-six-feet-wide lanes, shoulders ten-feet wide consisting of sand, gravel and "caliche," the surface being fairly hard packed when dry. The state introduced its exhibit No. S–1, being a map of the area drawn by Officer Jones, who testified that, as shown by the unscaled map, at a point east of the general area of the accident, two private roads intersected the Carlsbad road, the northern road coming from the Carlin residence and the southern road coming from the Linam residence; that at a point west of the Carlin and Linam roads, but still east of the general area of the accident, were two other roads which intersected the Carlsbad road; that the northern road at this point was a "caliche" road; that the southern road was State Highway 8, hereinafter referred to as the Monument road; that at this intersection, a traffic control device known as a "yellow blinker light" was placed; and that all of these roads were an undetermined distance from the estimated point of impact.

Regarding the accident itself, Officer Jones testified that he found black tire marks running from one side of the highway to the other, ending at the estimated point of impact; that these tire marks, in his opinion, were caused by skidding rather than braking; that the accident was caused by defendant's west-bound car sideswiping the east-bound car of decedent; and that the estimated point of impact was four-feet south of the south edge of the pavement, that being the lane of traffic in which the decedent was traveling. Officer Jones testified that, in his opinion based upon his training and experience as a po-

lice officer, the defendant was under the influence of intoxicants.

Dr. W. E. Badger, a medical doctor practicing in Hobbs, testified as to the injuries suffered by both the decedent and defendant, whom he saw at the Lea General Hospital on November 10, 1962. Regarding the physical condition of defendant, he was asked:

"Q. Now, will you state what it was, if you now recall, that Mr. Fields said to you when you offered him the last time the blook [sic] alcohol test?

"A. He said, 'Lets not do it and say we did.'

"Q. Now, what, if anything, did you notice unusual about the condition of Mr. Fields?

"A. He was somewhat disheveled. His eyes were bloodshot and red. He staggered somewhat when he walked. He couldn't stand without swaying. He had odor of alcohol on his breath.

"Q. From what you observed there, did you form an opinion at that time, and do you have one now as to whether Mr. Fields at that time was under the influence of alcoholic beverages?

"A. In my opinion, he was."

Robert Howard, a witness for the state, testified that, on the day and at the time of the accident, he was approaching the Carlsbad road from the Carlin house and, while stopped at the intersection, observed defendant's car being driven at a high rate of speed down the highway; that, because of his years of experience in drag racing and road racing, he was able to form an opinion of the speed; that in his opinion the speed of defendant's car was between 95 and 100 miles an hour; that, after defendant's car passed the intersection, the witness pulled in behind him and observed defendant's car swerve over on the right-hand shoulder of the highway, off the paved portion, then came back on the highway, straightened out and crossed the center line over on the south-bound lane, then:

"A. He swerved across the center line, came back across into his own, the north lane, came from back off of the north lane and back into the south lane again."

At this time the witness observed the decedent's Ford station wagon coming from the west, off on the south-side shoulder of the road, when defendant's Plymouth car came back out of the north lane, across the south lane and sideswiped decedent's car; that, after the collision, decedent's car overturned a number of times, throwing decedent out of the car, and defendant's car went down the road, crossed over off the pavement, backed out, and came back down the bar-ditch to where the decedent's car came to rest. On cross-examination,

Mr. Howard testified that it was 60 yards from the intersection where he was to the point of impact; that, before the collision, defendant's car slowed down but he never saw his brake lights; that from the point where defendant's car passed him to the point of impact was an estimated 130 yards; and that decedent's car came to rest some 20 to 25 yards from the point of impact. Upon this evidence the state rested its case.

For its first witness the defense called the defendant, who testified that, after ten years of military service, he and his brother opened an advertising sign shop in Artesia, New Mexico, which went out of business causing defendant to look for a new location; that, on the day before the accident, he had spent the night with a friend in Levelland, Texas, leaving to go to Brownfield, Texas, to see his brother-in-law O. L. Conn; that on November 10, 1962, they decided to go from Brownfield, Texas, to El Paso, Texas, to see Conn's son; that they started from Brownfield at noon, Texas time, and arrived at the State Line Bar an hour later; that defendant had one beer at the State Line Bar and Conn, unknown to defendant, purchased a pint or half-pint bottle of vodka; that they arrived in Hobbs about 1:30 and separated; that defendant went to the J. C. Penney Store and purchased a new shirt and changed shirts in the store; that Conn went to the barbershop for a shave and then to the Twilight Lounge, where defendant later met him, but that defendant did not drink there; that about 2:00 in the afternoon, they left Hobbs on the Carlsbad road and, while glancing at a road map, the right wheel of the car drifted off the road and, in attempting to correct this, defendant stepped on the brake lightly and turned his wheels to the left; that his brakes then locked, throwing his car across the highway and colliding with decedent's car; that after the accident, while at the hospital, defendant was requested to sign a form for a blood alcohol test and refused, on the grounds that he had been told by some insurance people not to sign anything immediately following an accident.

Mr. M. L. McNutt, the owner of the motel in Brownfield, Texas, where Conn stayed, testified that defendant checked in on November 8, 1962, stayed three nights, and that he saw him three or four times during that period and that his actions were normal.

Mr. J. C. Hill, owner of a cafe in Brownfield, testified that he had talked to defendant at 8:30, New Mexico time, and he was sober and there was no odor of alcohol on his breath.

Georgia Barbee, barmaid at the Twilight Lounge in Hobbs, testified that she remembered defendant when he met Conn and, although Conn was intoxicated, defendant did not have a drink.

Mr. O. L. Conn testified that, on the day of the accident, he had been drinking and was probably drunk, but that did not impair his vision. His version of the accident is substantially as testified to by defendant.

After rebuttal, witnesses were called by the state, the case went to the jury who found defendant guilty as charged in the information, recommending clemency to the court. On February 20, 1963, the trial court sentenced defendant to the penitentiary for not less than one year and not more than ten years, with the last five years suspended.

Appellant's first point is as follows:
"I. A person cannot be convicted of involuntary manslaughter under Section 40-24-7, N.M.S.A., 1953, even though he be guilty of reckless driving under Section 64-22-3, N.M.S.A., 1953, or driving while under the influence of intoxicating liquor under Section 64-22-2, N.M.S.A., 1953; unless such unlawful act not amounting to a felony is the direct and proximate cause of the death of the deceased.

"A. The State failed to sustain its burden of proof.

"B. The trial court failed to submit to the jury the defendant's theory of the case that the state must prove beyond a reasonable doubt that the alleged unlawful acts not amounting to a felony of the defendant were the direct and proximate cause of the decedent's death."

We find this point to be without merit. Regarding the argument that the state failed to sustain its burden of proof, we have repeatedly held that our role, on appeal of a criminal case, is that we will not review the evidence except to determine whether the verdict is supported by substantial evidence. State v. Alls, 55 N.M. 168, 228 P.2d 952; State v. Sisneros, 42 N.M. 500, 82 P.2d 274. We have reviewed the evidence and find that the verdict is supported by substantial evidence and we shall not overturn it.

Appellant's second argument under this point appears to be based upon the idea that the decedent's own speed and manner of driving was the sole, direct and proximate cause, or a sufficient intervening cause, of his own death. We cannot accept this contention.

In State v. Nichols, 34 N.M. 639, 288 P. 407, we held that the unlawful act must be the proximate cause of the homicide in order to constitute involuntary manslaughter. See also, State v. Sisneros, supra; State v. Leopold, 110 Conn. 55, 147 A. 118; State v. Brinkley, 354 Mo. 1051, 193 S.W.2d 49; State v. Ward, 258 N.C. 330, 128 S.E.2d 673; State v. Rounds, 104 Vt. 442, 160 A. 249. The rule is stated in 40 C.J.S. Homicide § 11b, p. 854, as follows:

"The act of accused must be a proximate cause of death but need not be the direct, immediate cause. It is sufficient if the direct cause resulted naturally from the act of accused, as where the direct cause was a disease or infection resulting from the injury inflicted by accused."

Therefore, the evidence in the instant case showing and the jury finding that the speed and intoxicated condition of defendant was the direct and proximate cause of the accident which caused the death of decedent, it was not error for the trial court to refuse defendant's requested instructions.

■ Under his point II, appellant claims error because the trial court did not instruct separately on the law applicable to the crime of homicide resulting from driving while under the influence of intoxicating liquor and homicide resulting from reckless driving. It is sufficient answer to this argument to point out that instructions are to be read as a whole and, when so considered, if the law is fairly and correctly presented, nothing more is required. State v. Beal, 48 N.M. 84, 146 P.2d 175. Compare, State v. Sanders, 54 N.M. 369, 225 P.2d 150. In the instant case, we are satisfied that the jury was adequately and correctly instructed as to the proof required in either circumstance, and the point made is without merit.

Under point III, appellant contends:

"III. A person, when accused of driving while under the influence of intoxicating liquor, has the absolute right to refuse to take a blood alcohol test for whatever reason he chooses and in a trial involving such a charge, the refusal by the trial court to instruct that the defendant has such a right is reversible error."

The testimony, as to the effort to obtain a blood alcohol test on the part of the state and of the defendant himself, went in without objection, and the defendant concedes that any objection he may have had to the admission of such refusal to take a blood alcohol test was waived.

In Breithaupt v. Abram, 58 N.M. 385, 271 P.2d 827, aff'd 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448, we held that the taking of a blood sample from an unconscious defendant was not a denial of due process. In reaching our decision, we relied strongly upon People v. Haeussler, 41 Cal.2d 252, 260 P.2d 8, cert. denied 347 U.S. 931, 74 S.Ct. 533, 98 L.Ed. 1082, wherein it was held that the taking of a blood sample of an unconscious person, under the facts there present, could not be characterized as so shocking to the conscience as to constitute a violation of due process. To the same effect is State v. Bock, 80 Idaho 296, 328 P.2d 1065; State v. Pierce, 120 Vt. 373, 141 A.2d 419; and Walton v. City of Roanoke, 204 Va. 678, 133 S.E.2d 315.

There is no evidence in the record before us to show an arrest of appellant and, accordingly, we assume that at the time of the refusal to take a blood alcohol test, appellant was not under arrest, thus raising the question of appellant's right to refuse on the grounds of an illegal search and seizure. In Commonwealth v. Tanchyn, 200 Pa.Super. 148, 183 A.2d 824, cert. denied 375 U.S. 866, 84 S.Ct. 138, 11 L.Ed. 2d 92, in facts similar to the present case, the court stated that, in its opinion, there was no violation of the Fourth Amendment of the U. S. Constitution in the case, because the seizure of the blood was not made by state officials but was performed by private individuals, to-wit, the hospital personnel. See also, People v. Randazzo, 220 Cal.App.2d 768, 34 Cal.Rptr. 65, which held that the exclusionary rule of evidence, as enunciated by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, does not apply to search and seizures by private persons which, if carried on by the police, are illegal.

Appellant directs our attention to the cases of State v. Severson, (N.D.1956), 75 N.W.2d 316, and People v. Stratton, 286 App.Div. 323, 143 N.Y.S.2d 362. The result in those cases turned upon a statute, not present in this jurisdiction, which prevented the taking of blood without the consent of the blood donor. These cases are readily distinguishable. Appellant also cites Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396, and asserts that it is conclusive in his favor. That case is not remotely in point and of no help to appellant.

■ Accordingly, we find nothing in Art. II, §§ 14 and 15, of the New Mexico constitution, or in our laws or decisions which, under the facts of this case, would give him the legal right to have the trial court instruct the jury that he has a right to refuse to take a blood alcohol test. People v. Conterno, 170 Cal.App.2d Supp. 817, 339 P.2d 968; 87 A.L.R.2d 370, 378–379. Appellant's third point is without merit.

Finding no error, the judgment is affirmed. It is so ordered.

CARMODY and MOISE, JJ., concur.