Keene District Court,
No. 5449.

STATE

*v.*

THOMAS W. DAVIS.

Argued November 1, 1966.
Reargued February 7, 1967.
Decided March 7, 1967.

*George S. Pappagianis*, Attorney General and *Norman E. D'Amours*, Assistant Attorney General ( *Mr. D'Amours* orally ), for the State.

*Goodnow, Arwe & Ayer* ( *Mr. Francis H. Ayer* orally ), for the defendant.

DUNCAN, J. The defendant was involved in a motor vehicle collision on April 24, 1965 on the public highway from Keene to Marlboro, " both vehicles in the east bound lane. " The agreed facts are as follows:

" The Defendant was alone in his car with his feet on the driver's side and his head on the passenger side of the car. The accident occurred at about 7:00 P. M., and the police arrived to investigate shortly thereafter. Officer Rosin gave oxygen to the driver and was unable to talk with him because he had intermittent periods of unconsciousness. The officer observed the strong odor of alcohol on his breath. Officers Rosin and Metcalf helped the Defendant out of the motor vehicle, at which time he was taken to the hospital by ambulance. Officer Metcalf took pictures of the scene at that time. Upon arrival at the hospital, Dr. Ballou, the attending physician, gave the Defendant emergency treatment for lacerated face, shock, fractures of ankle, etc. In order to treat the patient, and in the event he should need blood, Dr. Ballou had Mr. Lawrence Derby, the laboratory technician employed by the Elliot Community Hospital, take blood samples. The initial blood samples taken were used to type and cross - match the Defendant's blood with other blood in the event he needed a transfusion. At the request of Dr. Ballou, Mr. Derby took a second sample of blood 15 minutes later and a third sample of blood about 9:30 p.m. At that time, the second sample of blood was placed in an ordinary test tube and had clotted, and the third sample of blood was placed in the sealed container normally used by the police for alcoholic testing. The second and third samples of blood taken eventually found their way to the police station, there being no evidence of how they were transported from the hospital to the police station, and from the police station they were delivered to Miss Guptill at the State Laboratory by Chief Bridgham on April 28, 1965. The State Laboratory testing indicated a .18 alcoholic content in the second sample of blood taken and a .16 alcoholic content in the third sample of blood taken.

"On the day following the taking of blood samples, Officer Rosin talked with the Defendant at the hospital, at which time the Defendant told him that he had had two drinks of liquor prior to the accident and had fallen asleep. He also told the officer that he was alone in the car with his dog. The State introduced one of the pictures taken by Officer Metcalf showing the Davis car after the accident in the left hand lane of the highway."

The objections and motions, all of which were denied subject to the defendant's exceptions, were as follows:

"1. The Defendant objected to any testimony by Dr. Ballou on the basis that he was serving in a dual capacity, as attending physician and for the police department in taking the second and third samples of blood.

"2. That the testimony of Dr. Ballou was improper because of a physician-patient privilege.

"3. That the testimony of Dr. Ballou and Mr. Derby be stricken because there was no showing by the State of consent by the Defendant to the taking of his blood.

"4. That the testimony of Officer Rosin be stricken with respect to conversation to the Defendant the following day because the Defendant had not been warned prior to the conversation of his legal right to remain silent, and that he might have legal counsel.

"5. That there was no expert testimony that the Defendant was under the influence of intoxicating liquor.

"6. That there was no evidence that the Defendant was the operator of the automobile."

The principal issues presented relate to the defendant's motion to strike the testimony of the attending physician and the hospital technician, upon the ground there was no showing that the defendant consented to the taking of his blood, and to the motion to strike the testimony of the police officer concerning his conversation with the defendant on April 25, 1965, on the ground that the defendant was not first warned of his constitutional right to remain silent, or advised of his right to legal counsel.

Although the agreed statement does not indicate the specific testimony of the physician and the technician to which objection was made, it may be assumed that it served at the least to identify the samples of defendant's blood which were analyzed and found to have an alcoholic content sufficient under the statute to constitute prima facie evidence that he was under the influence of intoxicating liquor. RSA 262-A:63.

The gist of the defendant's objection is that the taking of his

blood without his consent was an unlawful search and seizure, in violation of his constitutional rights. At the outset we may take note that *State* v. *Sturtevant*, 96 N. H. 99, is not now controlling, in view of the decision of the United States Supreme Court in *Mapp* v. *Ohio*, 367 U. S. 643, overruling *Wolf* v. *Colorado*, 338 U. S. 25, and holding that the Fourth Amendment, applied to the states through the Due Process Clause, requires the exclusion of unconstitutionally seized evidence. *State* v. *Coolidge*, 106 N. H. 186, 190-191. We note also that we are not here concerned with the so-called "implied consent" law which provides for blood tests at the direction of an officer "having reasonable grounds to believe the person to have been driving" but became effective after the date of the offense charged here, and therefore is not controlled by this decision. RSA 262-A:69a; Laws 1965, 238:1. See *State* v. *Findlay*,( Iowa ) 145 N. W. 2d 650; *People* v. *Lane*, 240 Cal. App. 2d 634.

The decision of *Schmerber* v. *California*, 384 U. S. 757, relied upon by the State, would furnish a conclusive answer to the defendant's contention, so far as it is grounded upon the Federal Constitution, but for one circumstance which we regard as decisive. It does not appear that the defendant was under arrest when the blood was taken. The *Schmerber* case stemmed from a conviction of the offense of driving an automobile while under the influence of intoxicating liquor, under California law a misdemeanor as is the offense with which the defendant is charged under our statute. Schmerber objected to receipt in evidence of an analysis of a blood sample taken by a physician in a hospital despite his refusal to consent. In concluding that this was not a violation of Schmerber's constitutional rights, the Court relied upon the fact that the taking of blood accompanied his arrest within two hours of the accident in which he had been involved, under circumstances reasonably warranting a belief that delay for the purpose of seeking a search warrant would threaten destruction of the evidence. *Id.*, 770. Taking of the sample was considered to be "an appropriate incident to [his] arrest." *Id.*, 771.

In the case before us however, the agreed facts fail to show that the defendant was under arrest when the blood was taken, or that his arrest was in any sense contemporaneous therewith. See *Cannon* v. *State*, 235 Md. 133, 137; Annot. 89 A.L.R. 2d 715, 798. The record shows that the complaint was sworn to

under date of June 1, 1965, and the warrant issued on the same date. Thus the inference to be drawn is that the arrest was made some thirty-eight days after the alleged offense was committed.

Without a warrant, a lawful arrest could have been made only if there was reason to believe that the misdemeanor was committed in the presence of the arresting officer ( RSA 594:10 ), which was not this case. Where an arrest may lawfully be made, a search without a warrant made prior to the arrest is not necessarily unreasonable or unlawful if substantially contemporaneous with the arrest ( *Cipres* v. *United States*, 343 F. 2d 95, 98 ( 9th Cir. 1965 ); Annot. 89 A.L.R. 2d 715, *supra* ), or if made with consent. *State* v. *Laro*, 106 N. H. 500.

In the instant case consent was not shown, and so far as appears the search was not proximate to the arrest either in time or place. *Preston* v. *United States*, 376 U. S. 364. See also, *Stoner* v. *California*, 376 U. S. 483. " There are exceptional circumstances in which, on balancing the need of effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with " even if there has been no lawful arrest, but " this is not such a case. " *Johnson* v. *United States*, 333 U.S. 10, 14-15. See *Schmerber* v. *California*, *supra*, 384 U. S. 757, 770; *Cooper* v. *California*, 386 U.S. 58. It " will not do " to justify an arrest by a search, and the search by the arrest. *Johnson* v. *United States*, 333 U. S. 10, 16-17; *People* v. *Mickelson*, 59 Cal. 2d 448. See Lefave, Search and Seizure: Course of True Law, 1966 U. Ill. Law Forum ( No. 2 ) 255, 302-303. On the record now before us, we conclude that the evidence of the blood tests should have been excluded. *People* v. *Young*, 248 N.Y.S. 2d 287 ( Cty. Ct. ); *People* v. *Brown*, 45 Cal. 2d 640. As stated in *Ker* v. *California*, 374 U. S. 23, 34: " The evidence at issue, in order to be admissible, must be the product of a search incident to a lawful arrest, since the officers had no search warrant. "

The testimony concerning statements made to the police officer at the hospital on the day after the accident was properly received. The defendant was not under arrest when the statements were made, and the case is not governed by *Miranda* v. *Arizona*, 384 U. S. 436. The requirements of that case, which was decided on June 13, 1966, were not retroactive, so as to apply to the trial of the case before us which commenced well before that date. *Johnson* v. *New Jersey*, 384 U. S. 719. The circumstances

surrounding the conversation between the police officer and the defendant at the hospital on April 25, 1965 in no way parallel those which occasioned the holding of the earlier case of *Escobedo* v. *Illinois*, 378 U. S. 478. The defendant in the case before us was not in custody, he was not denied counsel, and there is no indication that the proceedings had shifted from the investigatory to the accusatory stage at the time the conversation took place. In the circumstances disclosed by the record, the evidence was admissible. *State* v. *Santos*, 107 N. H. 490.

The defendant's argument that testimony by the physician and by the technician was inadmissible because of a privilege not to disclose communications between patient and physician ( *State* v. *Sullivan*, 60 Wash. 2d 214 ), finds no basis in the law in this jurisdiction. The privilege is one which did not exist at common law ( 8 Wigmore, Evidence ( McNaughton Rev. ) *s.* 2380; *State* v. *Reid*, 146 Conn. 227 ) and this state has never established it by statute. *Cf.* RSA 330-A:19; RSA 571:29 ( supp ). The question of whether the withdrawal of blood is to be considered " communicative " or not thus is not presented. See *Schmerber* v. *California*, 384 U. S. 757, 761.

The defendant's objection that there was " no evidence " that the defendant was operating the vehicle in which he was found is without merit. Circumstantial evidence may be utilized as proof of a crime, and eyewitnesses to the offense charged are not essential. *State* v. *Amero*, 106 N. H. 134, 136.

*Exceptions sustained in part and overruled in part; remanded.*

GRIMES, J., concurred in the result; the others concurred.