535 P.2d 644

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Jeffrey Howard RICHERSON, Defendant-Appellant.**

**No. 1599.**

Court of Appeals of New Mexico.

March 12, 1975.

Certiorari Denied May 2, 1975.

438

Jerry Wertheim, John Wentworth, Jones, Gallegos, Snead & Wertheim, P. A., Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Santa Fe, Jay F. Rosenthal, Asst. Atty. Gen., for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Defendant was convicted of homicide by vehicle while driving in a reckless manner contrary to §§ 64–22–1 and 64–22–3, N.M. S.A.1953 (2d Repl.Vol. 9, pt. 2). He appeals. We reverse.

A. *The blood test admitted in evidence was reversible error.*

■ Defendant was acquitted of homicide by vehicle while driving under the influence of intoxicating liquor. Nevertheless, evidence of intoxication bears upon the question of whether defendant was guilty of reckless driving and is a circumstance to be considered by the jury in deciding the issue. State v. Sisneros, 42 N. M. 500, 82 P.2d 274 (1938).

On the night of July 1, 1972, the fatal accident occurred on Diamond Drive west of 38th Street in Los Alamos, New Mexico. Shortly after the accident, defendant was taken in an ambulance to the Los Alamos Medical Center. At about 11:15 p. m. that night, a pathologist was requested by a police officer and a surgeon at the Medical Center to do a blood alcohol test. After the request from the police officer, the pathologist proceeded to draw the blood from defendant. The police officer had not consulted with or talked to defendant before the test was made, nor was he called to testify in this case.

Defendant had a severely broken leg, miscellaneous bruises and cuts, and an un- resolved question of fracture or dislocation of the left elbow and a question of whether he received head injuries. The pathologist testified that he talked to defendant, but no inquiry was made of the conversation. He was asked if defendant was conscious. He answered:

He was responsive, I can't really say that he really understood what I was saying.

The pathologist did not request permission to take a blood sample, nor did he indicate that defendant knew the test was being taken.

It is undisputed that defendant was not under arrest; *that neither defendant nor any member of his family consented to the* doctor's blood test or the release thereof to the district attorney's office. There is no evidence that defendant did or did not object to the blood test nor any evidence that defendant was under the influence of intoxicating liquor, nor any evidence that probable cause existed to make a search.

Defendant moved to suppress the results of the blood test on two grounds: (1) that consent was not obtained after arrest pursuant to the "Implied Consent Act", and (2) lacking consent was a violation of defendant's constitutional rights.

We agree on both grounds.

(1) *Implied Consent Act*

Section 64–22–2.6(A), N.M.S.A.1953 (2d Repl.Vol. 9, pt. 2) of the "Implied Consent Act" provides that a

. . . person who operates a motor vehicle within this state shall be deemed to have given consent . . . to a chemical test or tests of his . . . blood for the purpose of determining the alcoholic content of his blood, *if arrested for any ˙ offense* . . . committed while the person was driving . . . while under the influence of an intoxicating liquor. [Emphasis added]

■ The consent provided in § 64–22–2.- 6 is one which implies consent if the person is arrested.

Section 64–22–2.8 of the same Act provides:

Any person who is dead, unconscious or otherwise in a condition rendering him incapable of refusal, *shall be deemed not to have withdrawn the consent provided by section 64–22–2.6 NMSA 1953*, and the test or tests designated by the law enforcement officer may be administered. [Emphasis added]

Section 64–22–2.11 provides:

A. If a person *under arrest* refuses upon request of a law enforcement officer to submit to chemical tests designated by the law enforcement agency as provided in section 64–22–2.6 NMSA 1953, *none shall be administered*.

B. The commissioner, upon receipt of a sworn report of a law enforcement officer that he had reasonable grounds to believe *the arrested person* had been driving . . . while under the influence of intoxicating liquor and that, upon his . . . being advised that failure to submit could result in revocation of his privilege to drive, shall revoke the person's New Mexico driver's license . . . for a period of one [1] year. . . . [Emphasis added]

Paraphrasing, these provisions in essence declare that the driver of a motor vehicle in this state: (1) impliedly consents to a blood alcohol test, (2) when arrested for any offense, (3) allegedly committed while under the influence of intoxicating liquor, (4) which implied consent cannot be withdrawn under certain circumstances, (5) and upon refusal, no test shall be administered, but the driver's license can be revoked.

Under a similar statute, the Supreme Court of Washington, in State v. Wetherell, 82 Wash.2d 865, 514 P.2d 1069, 1073 (1973), wrote:

Almost without exception, each court considering the matter held a lawful arrest to be the essential introductory step to implied consent provisions. Results adduced from sobriety tests not preceded by such an arrest or by actual consent were condemned and held to be inadmissible evidence. [Citations omitted].

Our current implied consent statute compels a like conclusion.

We add to the citations of *Wetherell*, People v. Superior Court of Kern County, 6 Cal.3d 757, 100 Cal.Rptr. 281, 493 P.2d 1145 (1972); People v. Todd, 7 Ill.App.3d 617, 288 N.E.2d 512 (1972); Bailey v. City of Tulsa, Okla.Cr., 491 P.2d 316 (1971); State v. Brunner, 211 Kan. 596, 507 P.2d 233 (1973); Holland v. Parker, 354 F.Supp. 196 (D.C.S.D.1973). See, In Re McCain, 84 N.M. 657, 506 P.2d 1204 (1973); State v. Trujillo, 85 N.M. 208, 510 P.2d 1079 (Ct.App.1973).

█ The trial court erred in not suppressing the results of the defendant's blood alcoholic test under the "Implied Consent Act".

*(2) Constitutional Rights*

Two constitutional questions arise. (1) The privilege of any person not to "be compelled in any criminal case to be a witness against himself" under the Fifth Amendment to the Constitution of the United States, and (2) "The right of people to be secure in their persons . . . against unreasonable searches and seizures . . . " under the Fourth Amendment to the Constitution of the United States. Article II, Section 10 of the New Mexico Constitution provides that "The people shall be secure in their persons . . . from unreasonable searches and seizures".

█ At the outset, we want to make it clear that if the blood test was made at the sole request of the surgeon, a private individual, the doctrine of search and seizure would not be applicable. See State v. Fields, 74 N.M. 559, 395 P.2d 908 (1964). The trial court understood that the request came from a police officer because the trial court relied on Breithaupt v. Abram, 58 N.M. 385, 271 P.2d 827 (1954), aff'd 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957) and Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). These authorities do not support the trial court's decision.

In *Breithaupt,* defendant was lying unconscious in the emergency room of a hospital, the smell of liquor was detected on his breath, and a state patrolman requested that a sample of his blood be taken. The Supreme Court of the United States held that defendant was not deprived of due process of law in violation of the Fourteenth Amendment; that the Fourteenth Amendment does not forbid the use of evidence obtained by an unreasonable search and seizure violative of the Fourth Amendment, nor of compelled testimony violative of the Fifth Amendment, even if the evidence was so obtained. The court relied on Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) since overruled in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

*Breithaupt* no longer stands as authority.

■■ In *Schmerber,* the defendant had been arrested at the hospital while receiving treatment for injuries suffered in an accident involving the automobile that he had apparently been driving. At the direction of a police officer, a blood sample was then withdrawn from defendant's body by a physician at the hospital. The court held that the privilege against self-incrimination applies to disclosures that are communicative or testimonial, and the defendant was not compelled to testify against himself. We have adopted this rule. State v. Jamerson, 85 N.M. 799, 518 P.2d 779 (Ct. App.1974). There was no violation of the Fifth Amendment.

The court also held that a blood alcohol test falls within the Fourth Amendment because it constitutes a search of "persons"; that the warrantless search of the defendant was justified because, (a) it was made incident to a lawful arrest, (b) plaintiff smelled of liquor, and (c) the police officer was confronted with an emergency due to the progressive diminution of the blood alcohol level during the time interval incident necessary to obtain a search warrant.

■ There is a conflict of authority of whether in *Schmerber* an arrest prior to

the blood test is an essential element of the concept of an unreasonable search and seizure. We adopt the view that it is. State v. Trujillo, supra; People v. Superior Court of Kern County, supra; State v. Wetherell, supra; People v. Todd, supra; Mitchell v. State, 227 So.2d 728 (Ct.App. Fla.1969); State v. Brunner, supra; Commonwealth v. Murray, 441 Pa. 22, 271 A.2d 500 (1970); State v. Davis, 108 N.H. 45, 226 A.2d 873 (1967); See, United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L. Ed.2d 67 (1973).

*Dionisio,* supra, states:

In *Schmerber,* we found the initial seizure of the accused *justified as a lawful arrest,* and the subsequent seizure of the blood sample from his body reasonable in light of the exigent circumstances. [Emphasis added] [93 S.Ct. 769, 35 L. Ed.2d 76]

People v. Superior Court of Kern County, supra, states:

The People favor us with no authority supportive of their startling proposition that in this context a lawful arrest is but a mere formality. Indeed this proposition runs directly counter to the law on search and seizure developed by the United States Supreme Court. [100 Cal.Rptr. 284, 493 P.2d 1148]

■ The trial court erred in not suppressing the results of the defendant's blood alcoholic test under the Fourth Amendment to the Constitution of the United States and Article II, Section 10 of the New Mexico Constitution.

B. *Admitting testimony of witness as to defendant's manner of driving prior to accident was not error.*

A witness testified, over objection, that, prior to the accident, defendant revved his engine at high RPMs; he was squealing his tires and his tires smoked for about 25 yards. This conduct occurred at a Gulf station some distance from the place of the accident.

■ The determination of the admissibility of the testimony is a matter within

the sound discretion of the trial court. Garrett v. Howden, 73 N.M. 307, 387 P.2d 874 (1963); Comins v. Scrivener, 214 F.2d 810 (10th Cir. 1954), 46 A.L.R.2d 1; See also Annot. 46 A.L.R.2d 9. There was no abuse of discretion.

C. *Admitting testimony of witness as to speed of defendant's car was not error.*

A witness testified, over objection, that at the time of the accident, defendant was proceeding at 70 miles per hour. He was about 100 to 200 feet from the intersection. Defendant states: "[T]he question is whether there was a sufficient foundation to justify the admission of such testimony."

The foundation proved showed that the witness was 18 years of age with driver's training which included estimation of speed. He passed the driver's training course. He had driven a car for about a year and a half. He had observed and estimated speeds. He observed traffic moving east and west on Diamond Drive daily. The night was clear. He observed the car approaching from the east to the west on Diamond Drive at 38th Street at approximately 10:30 p. m., which car collided with decedent's car. He heard the screech of tires and looked at the intersection. The sound of the collision was so loud it shook the windows in front of him. He had fine eyesight. He had estimated the speed of vehicles in the past. The time interval between the screech of tires and the collision was two to three seconds. He saw defendant's vehicle from the intersection to the point of impact, approximately 124 feet.

Under similar circumstances, a witness 300 feet distant from the highway at night was allowed to express an opinion on the defendant's speed at 75 miles per hour. State v. Deming, 66 N.M. 175, 344 P.2d 481 (1959). We draw the line where the opinion of the witness is speculative. Pavlos v. Albuquerque National Bank, 82 N.M. 759, 487 P.2d 187 (Ct.App.1971).

■ A sufficient foundation was proven. Whether the witness was qualified to express an opinion concerning the speed of defendant's car was within the court's discretion. Dahl v. Turner, 80 N. M. 564, 458 P.2d 816 (Ct.App.1969). There was no abuse of discretion.

D. *Reckless driving was properly submitted to the jury.*

Section 64–22–3(A), N.M.S.A.1953 (2d Repl.Vol. 9, pt. 2) reads:

Any person who drives any vehicle carelessly and heedlessly in willful or wanton disregard of the rights or safety of others and without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property is guilty of reckless driving.

The evidence is undisputed that defendant drove 70 m. p. h. in a residential neighborhood, in a 25–35 m. p. h. zone, and on the wrong side of the highway and smashed into decedent's car and killed him. A jury would have a right to believe that the collision was not accidental; that driving on the wrong side of the road was not done to avoid a collision with any other vehicle, but that the defendant was driving in a careless manner and in wanton disregard of the rights or safety of others, or at a speed or in a manner so as to endanger any person. This creates an issue of fact of reckless driving. State v. Turney, 41 N.M. 150, 65 P.2d 869 (1937); State v. Rice, 58 N.M. 205, 269 P.2d 751 (1954); State v. Tracy, 64 N.M. 55, 323 P.2d 1096 (1958); State v. Platter, 66 N.M. 273, 347 P.2d 166 (1959); State v. Romero, 69 N. M. 187, 365 P.2d 58 (1961); Amaro v. Moss, 65 N.M. 373, 337 P.2d 948 (1959). Compare, State v. Harris, 41 N.M. 426, 70 P.2d 757 (1937).

We have reviewed the cases cited by defendant. None of them involve facts of defendant driving on the wrong side of the highway in a residential area at 70 m. p. h. In State v. Sisneros, supra, 42 N.M. at 511, 512, 82 P.2d at 281, the court said:

It is not shown that defendant was traveling on the left side of the road or driving at excessive speed or that he was otherwise negligent.

In State v. Hayes, 77 N.M. 225, 421 P.2d 439 (1966), the defendant's tire blew out and the car gradually angled onto the west shoulder of the road.

We hold the evidence was sufficient to submit to the jury homicide by vehicle while operating in a reckless manner.

Reversed. Defendant is granted a new trial. We deem it unnecessary to make any comment on the trial court's denial of defendant's motion for a new trial based on allegedly newly discovered evidence. Defendant will have ample opportunity to present such evidence at the new trial hereby granted.

It is so ordered.

HERNANDEZ and LOPEZ, JJ., concur.