779 P.2d 556

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Ted JOHNSTON, Defendant–Appellee.**

**No. 11353.**

Court of Appeals of New Mexico.

Aug. 1, 1989.

Certiorari Denied Sept. 6, 1989.

Hal Stratton, Atty. Gen., Santa Fe, for plaintiff-appellant.

Jake R. Evans, Evans and Robles, P.A., Las Cruces, for defendant-appellee.

## OPINION

HARTZ, Judge.

The state appeals from the district court's order suppressing the result of a blood-alcohol test on a blood sample taken from defendant at the request of a physician for the purpose of treating injuries suffered by defendant in a motor vehicle accident. We reverse.

Defendant and the state stipulated to the pertinent facts. Because of injuries sustained while driving a motor vehicle, defendant was transported by ambulance to a hospital. After noting that defendant had received head injuries and detecting an odor of alcohol coming from defendant, the physician in attendance at the emergency room included in his treatment plan a laboratory test to determine defendant's blood-alcohol level. Pursuant to that plan a hospital laboratory employee drew a blood sample (the medical blood sample) from defendant. The sample was drawn prior to defendant's arrest, was drawn solely for medical purposes, and was not drawn at the request of law enforcement authorities. Defendant was not advised that the medical blood sample could be used as evidence in a criminal proceeding against him. (On appeal defendant has asserted that the medical blood sample was drawn over his objection; but the stipulated facts provide no support for the assertion, so we do not consider it.)

Shortly after the medical blood sample had been drawn, a state police officer gave defendant warnings pursuant to the New Mexico Implied Consent Act, NMSA 1978, Sections 66–8–105 to –112 (Repl.Pamp.1987) and requested, over defendant's objection, that a hospital employee draw another blood sample (the legal blood sample). The district court, in a ruling not appealed by the state, suppressed the test result from the legal blood sample.

The state then requested that the district court allow the admission at trial of the medical-blood-sample-test result, which the state had subpoenaed from the hospital. The district court suppressed that result also, holding that to permit the use of the test result from the medical blood sample would circumvent the Implied Consent Act. The state appeals from that ruling.

The state offered the test result pursuant to the business records exception to the hearsay rule. SCRA 1986, 11–803(F). Defendant fails to indicate any way in which the requirements of that rule were not met. Rather, defendant contends that we should affirm the suppression by the district court because admission into evidence of the medical-blood-sample-test result would violate the Implied Consent Act and the protection against unreasonable searches and seizures provided by the fourth amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution.

## APPLICABILITY OF THE IMPLIED CONSENT ACT

■ When law enforcement officers cause a blood sample to be obtained in contravention of the provisions of the Implied Consent Act, evidence obtained from the sample may be inadmissible at trial. *See State v. Steele,* 93 N.M. 470, 601 P.2d 440 (Ct.App.1979); *State v. Richerson,* 87 N.M. 437, 535 P.2d 644 (Ct.App.1975). In this case, however, law enforcement officers were not involved in the decision to

take or test defendant's medical blood sample. To prevail, defendant would have us extend our precedents to hold that the Implied Consent Act governs even blood testing taken solely at the initiative of medical personnel for treatment purposes. In support of his contention that the Implied Consent Act requires that test results be suppressed, defendant relies on four out-of-state decisions. Yet, like the New Mexico precedents, all four cases are distinguishable, because each involved a law enforcement request that the blood sample be taken: *People v. Kenning*, 110 Ill.App.3d 679, 442 N.E.2d 1337 (1982); *State v. Loscomb*, 291 Md. 424, 435 A.2d 764 (1981); *Sartin v. State*, 617 P.2d 219 (Okla.Crim.App.1980); *People v. Moselle*, 57 N.Y.2d 97, 439 N.E.2d 1235, 454 N.Y.S.2d 292 (1982).

Decisions involving facts similar to those here do not support defendant. In *People v. Ameigh*, 95 A.D.2d 367, 467 N.Y.S.2d 718, 718–19 (1983) the court stated that the New York implied consent act was intended to apply only to blood-alcohol tests requested or procured by law enforcement officers. It concluded that "the statutory framework simply does not address itself to evidence of blood-alcohol levels derived as a result of bona fide medical procedures in diagnosing or treating an injured driver." Also holding that implied-consent-act restrictions do not apply to blood tests taken for medical purposes independently of the police are *Nelson v. State*, 650 P.2d 426 (Alaska Ct.App.1982); *Turner v. State*, 258 Ark. 425, 527 S.W.2d 580 (1975); *State v. Enoch*, 21 Or.App. 652, 536 P.2d 460 (1975); *Commonwealth v. Hipp*, 380 Pa.Super. 345, 551 A.2d 1086 (1988) (driver had refused officer's request to submit to blood test). *Cf. People v. Murphy*, 108 Ill.2d 228, 91 Ill.Dec. 653, 483 N.E.2d 1288 (1985) (certification requirements in Implied Consent Act for those administering blood test apply only to testing called for by law enforcement officers).

Our statutory scheme compels the same conclusion. The apparent purpose of the Implied Consent Act is to authorize and control law enforcement intrusions on the person of a suspect. The Act does not govern the taking of blood samples when law enforcement agencies are not involved. It does not protect against an intrusion on the person that is not by, or directed by, a law enforcement officer. Nothing in the Implied Consent Act suggests any legislative antipathy to taking and testing blood samples of drivers for purely medical reasons, nor does anything in the Act indicate that the legislature would consider it somehow unfair to use the results of such tests in a prosecution of the driver.

Defendant stipulated that the purpose for ordering the medical blood sample was purely medical. The doctor decided to order the test because of the indication of intoxication of defendant and the injuries to defendant's head. No law enforcement officer requested that the sample be taken or tested. Thus, the purpose of the Implied Consent Act was not violated by taking or testing that sample. There being no explicit bar in the Act to use of a sample acquired in the manner that it was acquired in this case, we hold that the Implied Consent Act does not require suppression of the test result from the medical blood sample.

CONSTITUTIONAL ISSUES

◼ Similarly, the provisions of the fourth amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution do not apply to intrusions by private persons. We have previously recognized that if a blood test is made at the sole request of a physician, a private individual, constitutional search-and-seizure doctrine is inapplicable. *See State v. Richerson*, 87 N.M. at 440, 535 P.2d at 647. Defendant relies on *People v. Perlos*, 170 Mich.App. 75, 428 N.W.2d 685 (1988). In *Perlos* hospital personnel decided on their own to take a blood sample from the defendant. A Michigan statute, however, required hospital personnel who performed chemical analyses of blood samples taken for medical treatment from motorists involved in automobile accidents to disclose the results of such tests to the prosecutor upon request for use in a criminal prosecution. The court held that the statute involved sufficient governmental participation to constitute "state action"

triggering fourth-amendment protections. Yet, even were we to agree with the result in that case, there is no such New Mexico statute. The prosecutor here used a subpoena to obtain the records from the hospital. The state's right to obtain the test result from the medical blood sample was no greater than the state's right to obtain evidence from any private person. Thus, on this issue *Richerson* is controlling.

We reverse the district court's order suppressing the test result obtained from the medical blood sample.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.